*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0348P (6th Cir.)
File Name: 00a0348p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DOTTIE RENEE MCALPIN,
     *Plaintiff-Appellant,*

     *v.*

No. 99-5281

LEXINGTON 76 AUTO TRUCK
STOP, INC., a Kentucky
corporation; MARIE MILLS, as
Administratrix of the Estate of
Vance Mills; BECKHAM
GARLAND; APPALACHIAN OIL
CORPORATION, a Kentucky
corporation; G&M OIL
COMPANY, INC., a Kentucky
corporation; B&V REALTY
CORPORATION,
     *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 97-00072—Joseph M. Hood, District Judge.

Argued: August 11, 2000

Decided and Filed: October 3, 2000

1

Before:  KRUPANSKY, WELLFORD, and BOGGS,
Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** William C. Rambicure, RAMBICURE, MILLER & PISACANO, Lexington, Kentucky, for Appellant.  Gary W. Napier, NAPIER & ASSOCIATES, London, Kentucky, for Appellees.  **ON BRIEF:** William C. Rambicure, Jeffrey John Kuebler, RAMBICURE, MILLER & PISACANO, Lexington, Kentucky, for Appellant.   Gary W. Napier, NAPIER & ASSOCIATES, London, Kentucky, for Appellees.

BOGGS, J., delivered the opinion of the court, in which KRUPANSKY, J., joined. WELLFORD, J. (p. 27), delivered a separate concurring opinion.

_____

## OPINION

_____

BOGGS, Circuit Judge.  Plaintiff-Appellant Dottie Renee McAlpin challenges on jurisdictional grounds two district court orders holding her in contempt of the court's prior orders and of the settlement agreement that the parties executed in an effort to terminate the litigation underlying this appeal.  Only one small part of the settlement agreement was incorporated into the court's order dismissing the suit.  Thus, the court had no jurisdiction with regard to most of the order appealed from.   We therefore reverse and remand for consideration of an order within the court's jurisdiction.

_____

## CONCURRENCE

_____

HARRY W. WELLFORD, Circuit Judge, concurring.  I concur in the opinion of Judge Boggs, but add a few comments that seem appropriate.

The district court's initial order naming Gahafer as Appalachian Oil Company's ("AOC") receiver was unfortunate and ill-advised, especially without the posting of a proper receiver's bond adequately to protect AOC in the even of the receiver's improper or unauthorized actions. This regrettable action has engendered multiple court filings, great expense to the parties, and recriminations.  I am not sure that Gahafer himself did not engender some of these problems, and an examination of his actions might show his awareness that a proper and substantial bond was never posted to protect AOC.  It was further regrettable that this receivership action was taken without a contemporaneous hearing.

It would appear, furthermore, that Gahafer's actions, vis-a-vis McAlpin seeking large fees, were taken with knowledge that plaintiffs had few, if any, assets to satisfy his claim and that such action might force a settlement with AOC by his former "clients."

If McAlpin is correct that the original contempt order was entered against her without a hearing, I would question the propriety of the district court's action in that regard.  In any event, pursuant to the opinion and holding under *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994), all of the actions of the district court seeking to enforce other provisions of the settlement agreement would be of no effect as being without jurisdiction.

defendants' proper remedy for these violations lies in a separate action for breach of the Settlement Agreement, in which suit the defendants could also request a preliminary injunction enjoining McAlpin from proceeding with her malpractice action to the extent that her case depends on claims she promised to abandon under the Agreement. *See Downey*, 30 F.3d at 687 (stating that because the district court "failed to retain jurisdiction over enforcement of the [parties' settlement] agreement when entering judgment, [the defendant's] breach of contract claim was properly addressed in a separate proceeding"). The district court may, however, enforce its orders concerning the return of confidential corporate documents against McAlpin if the court determines on remand that those orders bind McAlpin as well as Gahafer.

A proper reading of the Supreme Court's opinion in *Kokkonen* compels the conclusion that the district court lacked jurisdiction to enforce terms of the Settlement Agreement that were not expressly incorporated in its dismissal or other orders. The portions of the district court's January and May 1999 rulings directing McAlpin to comply with paragraphs 8 and 9 of the Settlement Agreement are therefore invalid. Whether the portions of the orders pertaining to the return of AOC documents may be enforced against McAlpin depends on whether the district court's March 10 and September 24, 1997, orders concerning the return of confidential documents can be construed to bind her even though they expressly refer only to Gahafer. Because the district court is in the best position to determine the scope and meaning of these orders, we **REVERSE** the judgment holding McAlpin in contempt of court and **REMAND** the case for further proceedings consistent with this opinion.

# I

## *History of the Litigation*

Plaintiff-Appellant Dottie Renee McAlpin brought the suit that gave rise to the settlement agreement at issue in this appeal in her capacity as administratrix of the estate of her late father, Robert T. Mock, and as an alleged shareholder of the primary defendant in this case, Appalachian Oil Company (AOC).[1] In her suit before the district court, McAlpin alleged that AOC, in a series of illegal transactions, defrauded Mock, and thereby his estate, of the value of the stock he allegedly held in the company. In her complaint, McAlpin asserted that the district court had federal question jurisdiction over her suit because AOC's unlawful actions constituted a pattern of racketeering under the civil RICO statute, 18 U.S.C. §§ 1961-1968. The state law claims over which McAlpin claimed the district court had supplemental jurisdiction were previously pled in 1983 and 1986 by McAlpin's predecessors-in-interest, Robert Mock and his wife, Dottie T. Mock, and were also pled by McAlpin herself in a state court action in 1988. The claims raised in the state court proceedings were not adjudicated on the merits, however, so McAlpin was not barred from re-pleading them ancillary to her federal RICO claim.[2]

---

[1] Although AOC was administratively dissolved on November 7, 1996, for failing to file an annual report, it remains a party to this litigation and is referred to as the principal or primary defendant because it is the corporation in which Robert T. Mock, McAlpin's predecessor in interest, allegedly owned stock.

[2] The 1983 action filed was dismissed by the Pulaski Circuit Court for improper venue. The 1986 action was dismissed by the Knox Circuit Court for lack of prosecution, and the Kentucky Court of Appeals found that dismissal to be without prejudice. McAlpin brought the 1988 suit in Pulaski Circuit Court, but voluntarily dismissed the case upon learning that her father's 1983 suit in that court was dismissed for improper venue.

McAlpin's father, Robert Mock, was an AOC employee who was discharged by the company in the early 1980's. According to McAlpin, Mock owned 25% of AOC's stock when he was discharged, and had an option to acquire an additional 24% of the company's outstanding shares, which option he allegedly attempted to exercise after he left the corporation. When Mock's efforts to exercise the option were rejected by the company on May 28, 1983, Mock filed suit in the Pulaski Circuit Court to enforce his rights against AOC and its directors. Although Mock prevailed on his claims for past wages, his breach of contract and other claims were dismissed without prejudice for lack of venue. Mock died in March 1986, and Dottie Mock, his widow and the administratrix of his estate, refiled his breach of contract claims against AOC in Knox County Circuit Court, but the case was dismissed in April 1995 for lack of prosecution. When Dottie Mock died on September 6, 1994, McAlpin was appointed administratrix of her father's estate, and her husband Tim McAlpin was later appointed co-administrator. With Tim's assistance, McAlpin retained Douglas C. Brandon, one of the defendants in McAlpin's current legal malpractice suit in Fayette County, to represent the Mock Estate in its civil RICO suit against AOC in the district court. The Mock Estate was, and remains, insolvent. As McAlpin notes in her brief before this court, the Estate's only asset is Robert Mock's alleged 25% stock ownership in AOC and his alleged option to acquire an additional 24% of the company's outstanding shares.

### Procedural History in the District Court

McAlpin filed suit against AOC in the district court on February 19, 1997. According to McAlpin, Brandon, who offered to take the case on a contingency basis and to advance the Estate's litigation costs, advised her: (1) that the Estate had the best chance of recovering against AOC in a shareholder derivative suit on behalf of, and for the benefit of, AOC; (2) that he would ask for a temporary restraining order and for the appointment of a receiver upon the filing of the

artfully construed to imply that [she] was required to perform a specific act," the defendants failed to establish "by clear and convincing evidence that [she] violated any of the[] orders." Appellants Br. at 43; *see also EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir. 1985), aff'd 478 U.S. 421 (1986) (holding that a party may only be held in contempt of a court order if (1) the order clearly and unambiguously imposed an obligation on the party; (2) proof of the party's noncompliance with the order was clear and convincing; and (3) the party did not diligently attempt to comply with the order). Although the district court's 1997 orders do not specifically refer to McAlpin, it is possible to construe them, and in particular the portion of the March 10, 1997, order providing that "any copies made [of confidential AOC documents] shall also be returned to the defendants," as binding all parties to the litigation, not just Gahafer. *See Lucille v. City of Chicago*, 31 F.3d 546, 548-49 (7th Cir. 1994) (stating that a federal court will enforce or retain jurisdiction over a settlement agreement only to the extent that the court's judgment expressly or *implicitly* incorporates the terms of the agreement). However, because "there are few persons in a better position to understand the meaning of an order . . . than the district judge who ordered it," we will not decide whether the March 1997 mandate binds McAlpin, but will instead remand the issue to the district court for a determination concerning the scope of the order. *Scelsa v. City Univ. of New York*, 76 F.3d 37, 42 (2d Cir. 1996); *cf. Neuberg*, 123 F.3d at 955 (noting that, "as the judge who had presided over the waning years of [the underlying] lawsuit," the district judge was in the "best position to evaluate the settlement agreement . . . and whether the Neubergs were entitled to [relief thereunder]").

### III

The Supreme Court's opinion in *Kokkonen* precludes the district court from enforcing portions of the Settlement Agreement that were not expressly incorporated in either its dismissal order or in its prior orders against the parties. The

In this case, the district court's failure expressly to retain jurisdiction over the Settlement Agreement or to incorporate more than one of the settlement terms in its dismissal order precludes it from enforcing unincorporated terms against the parties. The portions of the district court's January 15 and May 3, 1999, orders directing McAlpin to comply with paragraphs 8 and 9 of the Settlement Agreement are therefore invalid. However, the district court may on remand uphold the portions of the orders directing McAlpin to return confidential documents to the defendants if the court determines that its 1997 rulings directing Gahafer to return all documents seized during his receivership also bound McAlpin, either directly or because she was complicit in the retention of the documents at issue.

### Jurisdiction to Enforce Prior Orders

Although Article III limits a district court's jurisdiction to enforce the terms of a settlement agreement, the district court always has jurisdiction to enforce its own orders. *See Kokkonen*, 511 U.S. at 380-81 (stating that a court has ancillary jurisdiction to "manage its proceedings, vindicate its authority, and effectuate its decrees" and thus has ancillary jurisdiction to enforce a settlement agreement incorporated in a court order because "breach of the agreement would be a breach of the order"); *American Town Center v. Hall 83 Assocs.*, 912 F.2d 104, 110 (6th Cir. 1990) (reaffirming the well-established rule that, if a court has jurisdiction over the substance of a litigation, it has jurisdiction to enforce the judgment it renders). Thus, the directives in the district court's January and May 1999 orders may be upheld to the extent that they are consistent with the terms of any order issued by the district court prior to dismissal of McAlpin's case.

McAlpin argues that the district court erred in holding her in contempt of its 1997 orders directing the return of confidential documents to AOC because those orders were directed only to Gahafer, and that "even if the orders could be

federal court complaint; and (3) that AOC would ultimately be responsible for the payment of all fees, costs and expenses. As evidenced by the statements in her brief, McAlpin was well aware that Brandon's "litigation strategy" contemplated the "appointment of a receiver to take over the assets, records and operations of AOC" and to "uncover more recent actionable offenses with the limitations period." Appellant's Br. at 10. In short, McAlpin was well aware that, despite her statements to the district court that a receiver should be appointed simply to prevent AOC from destroying evidence or mismanaging assets,[3] the Estate planned to use the receiver to seize and search AOC's records in an attempt to uncover evidence of actionable offenses that were not barred by RICO's four-year statute of limitations. To this end, Brandon filed an ex parte motion asking the district court to issue a temporary restraining order and to appoint Morris Gahafer, a forensic accountant, as AOC's receiver. The motion was supported by affidavits from McAlpin and from Gahafer, whom Brandon had solicited as a potential receiver prior to filing McAlpin's complaint.

Based on the supporting affidavits, the district court issued a temporary restraining order on February 19, 1997, enjoining AOC from destroying, altering and/or concealing documents and from disposing of corporate assets. The court also granted McAlpin's request to appoint Gahafer as receiver. At the time it issued the order appointing Gahafer, the district court believed, based on McAlpin's representations, that Gahafer's receiver's bond (secured by Ohio Casualty in the amount of $500,000) would serve as security pursuant to Federal Rule of Civil Procedure 65(c) for any costs or damages incurred by AOC were it subsequently determined that the company had been wrongfully enjoined or placed in

---

[3] In her affidavit in support of her motion for receivership, McAlpin requested that the court "appoint a receiver to oversee the day to day operations of AOC and insure that no documents or records are destroyed, altered, or concealed, or corporate assets dissipated."

receivership.[4]  In its order, the district court directed United States Marshals to accompany Gahafer to AOC's headquarters to serve the TRO, which was to remain in effect pending an injunction hearing on March 4, 1997.  On February 21, 1997, Gahafer, accompanied by federal marshals and armed private security guards, served the court's restraining order on AOC, searched the offices of AOC and its co-defendant G&M, and seized records from both companies' offices.  According to AOC, after threatening AOC employees when the employees objected to the unannounced search, Gahafer and the marshals left AOC's premises in a van containing some 52 boxes of confidential corporate documents.  At the injunction hearing on March 4, 1997, AOC objected to the adequacy of Gahafer's bond and to Gahafer's role in the litigation, expressing significant concerns regarding McAlpin's failure to post an injunction bond, the scope of Gahafer's power as receiver, and the manner in which Gahafer and the Marshals served the TRO and seized AOC's and G&M's corporate records.  Gahafer responded to AOC's objections by submitting to the court his "First Interim Receivership Report"[5] and by requesting an order approving his fees and expenses.

Upon realizing that, despite McAlpin's representations, Gahafer's bond was not a true injunction bond but served only to indemnify AOC for damages resulting from Gahafer's failure properly to account for funds that came into his possession as AOC's receiver, the district court on March 5,

---

[4] The court subsequently discovered that Gahafer's bond was posted only as security for any damages that AOC might sustain as a result of Gahafer's failure properly to account for funds that came into his possession as the company's receiver.

[5] The report stated, among other things, that AOC's records evidenced Robert Mock's ownership of 13 shares of AOC stock and that AOC appeared to have engaged in some interested transactions, but that Gahafer needed to review additional witnesses and interview certain AOC management employees to determine the extent of any wrongdoing.

settlement agreement pursuant to Rule 60(b) because, like the defendants in this case, the moving parties "were not really trying to reopen the dismissed suit, which would be the effect of a Rule 60(b)(6) motion setting aside the final judgment," but were instead trying to get the judge to "interpret the agreement, giving them the benefit [of their bargain]." *Id.* at 955; *see also National Presto Indus., Inc. v. Dazey Corp.*, 107 F.3d 1576, 1583 (Fed. Cir. 1997) (noting that a district court retains no inherent authority to enforce or interpret a settlement contract terminating the litigation). As this court held in *Hinsdale v. Farmers Nat'l Bank & Trust Co.*, 823 F.2d 993 (6th Cir. 1987), seven years before *Kokkonen* was decided, a district court that unconditionally dismisses an action with prejudice and does not attempt to retain jurisdiction to enforce the parties' settlement agreement cannot enforce the agreement because the "unconditional dismissal with prejudice terminate[s] the district court's jurisdiction except for the *limited purpose* of reopening and setting aside the judgment of dismissal within the scope allowed by Rule 60(b)." *Id.* at 995-96 (emphasis added).

In addition to the substantive problems associated with the district court's reliance on Rule 60(b) as the basis for ancillary jurisdiction over the Settlement Agreement, the defendants' failure to move the district court for relief pursuant to the Rule (the defendants brought their motion for contempt and for enforcement of the Agreement pursuant to Federal Rule of Civil Procedure 70), undermines the district court's interpretation of Rule 60(b) in its January 15 order. *See* Fed. R. Civ. P. 60(b) (stating that relief must be sought "on motion" by the aggrieved party); *Kalt v. Hunter*, 66 F.3d 1002, 1006 (9th Cir. 1995) (refusing to grant relief pursuant to Rule 60(b)(6) because the party seeking enforcement of the settlement agreement "did not seek Rule 60(b)(6) relief" but instead pled an "independent action seeking equitable relief" without "satisf[ying] his burden of establishing federal court jurisdiction") (citing *Kokkonen*, 511 U.S. at 378)).

Fed. R. Civ. P. 60(b)(6).

As the Supreme Court acknowledged in *Kokkonen*, some circuits have held that a dismissed suit can be reopened under Federal Rule of Civil Procedure 60(b)(6) by reason of breach of the agreement terminating the litigation. *See Kokkonen*, 511 U.S. at 378. However, the Court went on to observe that "[e]nforcement of [a] settlement agreement, . . . whether through award of damages or decree of specific performance, *is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction*." *Ibid.* (emphasis added). In this case, the district court sought to enforce specific provisions of the Settlement Agreement by holding McAlpin in contempt of court and by ordering her to perform specific acts. The district court's contempt order was clearly "more than just a continuation or renewal of the dismissed suit," and affirming the district court's reliance on Rule 60(b)(6) would create an exception to the holding in *Kokkonen* that would swallow the rule, giving the district court the type of broad enforcement jurisdiction that the *Kokkonen* Court reserved to courts that either specifically retain jurisdiction to enforce a settlement agreement or that expressly incorporate the terms of the agreement in a valid and enforceable order. *Ibid.*

Contrary to the defendants' assertion, the determination by some courts that (1) "repudiation of a settlement agreement that terminate[s] litigation pending before a court constitutes an extraordinary circumstance" justifying relief under Rule 60(b)(6), and (2) that *Kokkonen* permits parties to "revive a suit under Rule 60(b)(6) when a settlement agreement has been breached," *Leal v. Town of Cicero*, 2000 WL 765085 (N.D. Ill.), at *3 (citing *Keeling v. Sheet Metal Workers Int'l Assoc.*, 937 F.2d 408, 410 (9th Cir. 1991)), is simply not supported by *Kokkonen's* text or the manner in which the federal courts of appeals have applied the case. *See Kokkonen*, 511 U.S. at 380-81; *Neuberg*, 123 F.3d at 955. In *Neuberg*, for example, the Seventh Circuit affirmed the district court's refusal to interpret or enforce the parties'

1997, issued an order directing McAlpin to post a surety bond in the amount of $500,000 no later than 4.00 p.m. that day. The court also directed Gahafer to submit a proposed order clarifying his duties in the litigation. The district court extended the TRO until March 6, 1997, and ordered Gahafer to submit a balance sheet detailing AOC's assets and liabilities. At a hearing on March 6, 1997, the district court was informed that McAlpin had not posted the required surety bond as directed by the court's March 5 order,[6] and that Gahafer had not prepared a balance sheet. In response to McAlpin's failure to post bond and to questions concerning Gahafer's duties and qualifications as receiver, Judge Hood issued an order dated March 10, 1997, in which he: (1) dissolved the Temporary Restraining Order; (2) denied McAlpin's motion for a preliminary injunction; (3) granted Gahafer's motion for approval and payment of costs; (4) directed McAlpin to pay Gahafer's fees and costs totaling $28,640.92 as of March 5, 1997, along with any additional fees or charges thereafter incurred; (5) dissolved the receivership and relieved Gahafer of any further responsibilities as receiver; (6) directed Gahafer's counsel to retain all copies of Gahafer's First Interim Report, and (7) ordered Gahafer not to disclose to anyone other than his attorney any information he obtained in his capacity as AOC's receiver.

On May 1, 1997, Gahafer moved the district court to alter or amend the March 10 order to provide that McAlpin would

---

[6]McAlpin explains in her brief on appeal that she was unable to obtain the bond because the Mock Estate's only asset – its alleged stock ownership in AOC – was at the most worth $457,757.51, an amount insufficient to cover the obligation on a $500,000 bond. McAlpin blames her attorney for her failure to obtain the bond, alleging that, had "Brandon not chosen to rely on the questionable AOC financial statements and . . . instead undertaken any due diligence to investigate and/or obtain any independent valuations of just the real estate owned by AOC," a bond would have been issued because the insurers McAlpin contacted refused to issue a bond based on the alleged value of the Mock Estate's stock in AOC as reflected in AOC's March 1997 financial statement.

be held in contempt if she continued to withhold payment of his fees. McAlpin filed a response stating that the Estate was insolvent and that Gahafer's fees should be taxed against AOC and its co-defendants. McAlpin thereafter sought, in spite of the district court's March 10 order, to obtain Gahafer's First Interim Report and to obtain documents that Gahafer seized during his receivership by filing a Notice of Deposition and Subpoena Duces Tecum compelling Gahafer to testify at a deposition on June 16, 1997. On June 4, 1997, Gahafer sought a protective order against McAlpin's subpoena, and on July 18, 1997, the district court entered a comprehensive ruling disposing of the parties' various motions and clarifying its March 10 order dissolving both Gahafer's receivership and the temporary restraining order against AOC.

In its July 18 order, the district court also declined to tax Gahafer's fees against AOC, noting that it had made it "very clear" in its March 10 order that McAlpin was responsible for paying Gahafer's fees. The district court denied Gahafer's motion for a show cause order on the basis that it would be unfair to punish McAlpin for failing to pay Gahafer before the court ruled on her motion to amend its March 10 order. However, having denied McAlpin's motion to amend, Judge Hood on July 18 directed her not to delay any further and to pay Gahafer's fees within ten days. The court then sustained Gahafer's motion for a protective order, quashed McAlpin's subpoena, held that McAlpin could not depose Gahafer, and held that Gahafer would not be required to produce any document or to respond to any discovery in connection with McAlpin's suit against AOC. In addition to granting Gahafer's motion for a protective order, the court granted AOC's motion to amend the court's March 10 order dissolving the receivership to reflect the court's March 6 ruling that:

> The Receiver shall return all documents taken from the defendants' premises, . . . the Receiver shall not disclose

contempt sanctions against the appellee immediately "as he would have been able to had the district court retained jurisdiction or incorporated the [parties'] settlement agreement into the order of dismissal").

It is well settled that "[t]he mere reference in [a dismissal] order to [a settlement] Agreement does not incorporate the Agreement into the order." *Scelsa v. City University of New York*, 76 F.3d 37 (2d Cir. 1996) (rejecting the district court's attempt to enforce a settlement agreement referenced in the court's dismissal order on the basis that *Kokkonen* only permits jurisdiction where the "Dismissal Order expressly reserve[s] authority to enforce the Agreement, or incorporate[s] the Agreement into the order"). Because this court has joined other circuits in strictly applying *Kokkonen's* relatively narrow interpretation of a district court's ancillary jurisdiction to enforce settlement agreements terminating litigation, the district court's incorporation in its dismissal order of only a single term of the parties' 20-page settlement agreement is insufficient to support the court's exercise of ancillary jurisdiction over the entire agreement.

Nor can Rule 60(b)(6) be used to support the district court's attempt to enforce provisions of the settlement agreement not expressly incorporated in the dismissal order. Relief from a final judgment under Rule 60(b) is an "extraordinary remedy that is granted only in exceptional circumstances." *Dickerson v. Board of Educ. of Ford Heights.*, 32 F.3d 1114, 1116 (7th Cir. 1994); *see also Neuberg*, 123 F.3d at 955 (noting that "[n]othing in *Kokkonen* purports to change the stringent standards that govern the availability of relief under Rule 60(b)(6)"). Rule 60 provides in pertinent part:

> (b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . . (6) any other reason justifying relief from the operation of the judgment.

directing that all documents seized by Gahafer be returned to AOC.[14] However, this court has joined other circuits in strictly applying the holding in *Kokkonen*. Thus, the district court's incorporation in its dismissal order of only one term of the Settlement Agreement (which term does not, on its face, apply directly to McAlpin) is insufficient to confer jurisdiction over the entire agreement. In *Caudill v. North American Media Corp.*, 200 F.3d 914 (6th Cir. 2000), this court joined the Third and Eighth Circuits in holding that an order dismissing a case "pursuant to the terms of the parties' settlement agreement" does not provide a district court with ancillary jurisdiction to enforce the agreement under *Kokkonen*. *See id.* at 917 (stating that "[t]he phrase 'pursuant to the terms of the Settlement' fails to incorporate the terms of the Settlement Agreement into the order") (quoting *In re Phar-Mor, Inc., Securities Litigation*, 172 F.3d 270, 274 (3d Cir. 1999) (quoting *Meiner v. Missouri Dep't of Mental Health*, 62 F.3d 1126, 1128 (8th Cir. 1995))). In *Caudill*, this court flatly rejected the district court's attempt to distinguish *Kokkonen* and enforce the parties' settlement agreement on the basis that *its* final order dismissed the case "pursuant to the terms of the parties' agreement," whereas the dismissal order in *Kokkonen* "did not so much as refer to the settlement agreement." *Caudill*, 200 F.3d at 917. AOC's first argument in support of the district court's jurisdiction has thus already been rejected in this circuit. *See ibid.*; *see also Downey v. Clauder*, 30 F.3d 681, 684 (6th Cir. 1994) (finding, based on a strict application of the holding in *Kokkonen*, that the district court lacked jurisdiction to enforce the parties' settlement agreement because it failed specifically to "retain jurisdiction over enforcement of the agreement when entering judgment"); *Futernick v. Sumpter Township*, 78 F.3d 1051 (6th Cir. 1996) (noting that the appellant could not seek

---

[14]Although the statement in the court's March 10, 1997, concerning the return of confidential documents to AOC is directed primarily at Gahafer, the portion of the order directing that "any copies made shall also be returned to the defendants" is written in the passive voice and could possibly be construed to bind McAlpin. *See infra* p. 25.

any document or portion thereof to anyone, and . . . any copies made shall also be returned to the defendants.

McAlpin failed to pay Gahafer's fees within 10 days of the district court's July 18 order and, on July 31, 1997, Gahafer moved to hold McAlpin in contempt. Gahafer also requested that the court divest the Mock Estate of any interest in, or claim of ownership to, the corporate stock of AOC and vest such right, title, interest or claim in him. In the alternative, Gahafer moved the district court to issue a writ of attachment or sequestration against the Mock Estate's only asset – its alleged ownership interest in AOC – in order to effect compliance with the court's July 18 order. McAlpin filed a response on August 15, 1997, stating that the Mock Estate was insolvent and that it would be inappropriate for the court to hold it in contempt. McAlpin's counsel then proposed that the court require AOC to reissue 1.61 of the 13 shares of AOC stock allegedly owned by the Mock Estate to Gahafer to secure his fees, and that AOC remit the remaining 11.39 shares to the Estate.[7]

On September 2, 1997, the district court filed an extensive order dismissing McAlpin's suit on the merits and disposing of the parties' pending motions. In the September 2 order, the district court: (1) dismissed with prejudice as time-barred McAlpin's civil RICO claims; (2) declined to exercise supplemental jurisdiction over McAlpin's remaining state law claims; (3) denied as moot AOC's motion to transfer venue and McAlpin's motion for leave to file her response out of time; and (4) scheduled a hearing for September 5, 1997, to consider Gahafer's motion to hold McAlpin in contempt of the court's order directing her to pay Gahafer's fees. The district court never ruled on Gahafer's contempt motion, however, because the parties, who had been engaged in settlement negotiations since May 23, 1997, executed a final

---

[7]Gahafer's First Interim Report refers to corporate documents evidencing Robert Mock's ownership of 13 shares of AOC stock.

settlement agreement disposing of the litigation on September 22, 1997. McAlpin began the negotiations by demanding $1,000,000 in exchange for the release of all her claims against AOC. As McAlpin explains in her brief however, "following the entry of the September 2, 1997, Order, Brandon convinced [her and her husband] that they had no alternative but to settle their claims for essentially whatever amount the Defendants were willing to pay" because if they did not settle, Gahafer would proceed with his motion for contempt and the estate would lose all of its stock in AOC.

Pursuant to the Settlement Agreement, Mutual Release and Covenant Not to Sue executed on September 22, 1997, AOC paid McAlpin a total of $95,000, $36,000 of which went to Gahafer, $13,000 of which went to Brandon for fees, and $59,000 of which went to the Mock Estate. Both McAlpin and her husband personally initialed each page of the Settlement Agreement, which provided in pertinent part that:

Gahafer and the Plaintiffs warrant and represent to the Defendants that they have returned any and all documents, including copies thereof, which were obtained as the result of the performance of Gahafer's duties as receiver . . . . Simultaneously with the execution of this Agreement Gahafer and the Plaintiffs have executed an Agreed Order providing that any and all copies of the Receiver's First Interim Report will be delivered to the Defendants by Gahafer and/or his attorneys. The Plaintiffs agree to return to the Defendants any and all documents which they have concerning AOC and/or its operations . . . .

The Plaintiffs and Gahafer agree that from and after the date of this Agreement, they and anyone claiming through them will forever refrain from making any claim or demand or filing any claim in any form or before any court or administrative agency that i) Robert Mock or anyone claiming through him is or was a shareholder of

by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees" (citations omitted)). As the Court observed in rejecting the district court's attempt to enforce the settlement agreement on the basis that it had ancillary jurisdiction to "protect its proceedings and vindicate its authority":

[T]he only [relevant] order [issued by the district court] was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement. The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist. That, however, was not the case here. The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.

*Id.* at 380-81 (noting that, when a case is dismissed pursuant to Federal Rule of Civil Procedure 41(a)(2), "the parties' compliance with the terms of the settlement contract (or the court's 'retention of jurisdiction' over the settlement contract) may, in the court's discretion, be one of the terms set forth in the order").

Of course, the facts in this case support the district court's exercise of jurisdiction to a greater extent than did the facts at issue in *Kokkonen*. In this case, unlike in *Kokkonen*, the district court's order of dismissal did mention the settlement agreement, and noncompliance with the agreement would arguably "flout[] and imperil[]" the district court's orders

used to provide a party with relief from a judgment of dismissal. However, in this case the district court erred in construing Rule 60(b) as a broad exception to the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994), in which the Court held that a federal district court lacks jurisdiction to enforce a settlement agreement terminating litigation unless the court "expressly retained jurisdiction to enforce the settlement agreement" or "incorporated the terms of the settlement into the dismissal order." *Id.* at 380-81. When read in conjunction with the dismissal order in this case, *Kokkonen* precludes the district court from enforcing any provisions of the Settlement Agreement that were not expressly incorporated into an order entered while the case was still pending on the court's docket.

In *Kokkonen*, the Supreme Court held that the district court in which the case was settled did not have jurisdiction to enforce the provision of the settlement agreement requiring the petitioner to return certain files to the respondent because the district court did not expressly retain jurisdiction over enforcement of the agreement or incorporate the agreement's terms in its dismissal order. *See Kokkonen*, 511 U.S. at 377 (noting that the district court's dismissal order "did not so much as refer to the settlement agreement"). Writing for the Court, Justice Scalia explained that the district court erred in enforcing the agreement pursuant to its "inherent supervisory power" over the case because federal courts are "courts of limited jurisdiction" and "[n]either [Fed. R. Civ. Proc. 41(a)(1)(ii)] nor any [other] provision of law provides for jurisdiction of the court over disputes arising out of an agreement that produces the stipulation [to dismiss the case]." *Id.* at 378.

The Court proceeded to explain that ancillary jurisdiction to enforce a settlement agreement cannot be premised on a "relationship so tenuous as the breach of an agreement that produced the dismissal of an earlier federal suit." *Id.* at 380 (stating that ancillary jurisdiction exists for "two separate, though sometimes related purposes: (1) to permit disposition

AOC, ii) that any of the Defendants has committed any of the acts described in any of the litigation described in the preambles to this Agreement, or iii) that any of the Plaintiffs have any claims against any of the Defendants.

In addition to providing for the release of McAlpin's claims against the Defendants, the Settlement Agreement provided for the release of all claims that McAlpin might assert against her attorneys, Messrs. Brandon, Gilfedder, and Nash. Although McAlpin alleges in her brief on appeal that she was "not informed" that the Settlement Agreement "contained a release of [claims against her] counsel," Appellant's Br. at 28, both McAlpin and her husband personally initialed each page of the Agreement. The Agreement did not provide for the district court to retain jurisdiction over its terms or enforcement.

On September 24, 1997, the district court entered an Agreed Order of Dismissal With Prejudice, which provided in pertinent part:

The parties being in agreement and the Court being otherwise sufficiently advised that the parties hereto have settled their disputes, . . . . the Court hereby orders:

1.   That the Complaint filed herein is DISMISSED AS SETTLED WITH PREJUDICE AS TO ALL CLAIMS asserted therein and this action is Ordered stricken from the docket of this Court in its entirety.

2.   That this Court's Order of August 29, 1997, is hereby amended to provide that Count II of the Complaint is Dismissed with Prejudice.

3.   That the Court appointed Receiver, Morris Gahafer, is hereby ordered to turn over to the Defendants any and all copies of the Receiver's First Interim Report as well as any drafts thereof or any other documents which he may have obtained or generated as a result of the performance of his duties as Receiver herein.

As is apparent from the language of the order, the district court did not expressly retain jurisdiction over the Settlement Agreement nor order McAlpin herself to take any action, although the court's directive to Gahafer incorporated his (and potentially McAlpin's) duties under the Agreement.

In June 1998, McAlpin and her husband retained new counsel (Rambicure, Miller & Kuebler, hereinafter referred to as "RMK") to pursue a legal malpractice suit against the attorneys who represented the Mock Estate in the district court action before Judge Hood.[8]  Before filing McAlpin's malpractice claim in the Fayette Circuit Court on September 18, 1998, RMK, which took the case on a contingency basis, obtained from Tim McAlpin an appraisal of AOC's real estate holdings in Florida.  The appraisal suggested that AOC was worth more than the amount indicated in its 1997 financial statement, upon which McAlpin allegedly relied in agreeing to the settlement, and RMK relied on this appraisal along with several documents that McAlpin had obtained from Gahafer's investigation to support McAlpin's allegation that Brandon, Gilfedder, and Nash committed malpractice in advising her to settle her claims against AOC.  Indeed, McAlpin admits in her brief that the documents RMK is now relying upon to support McAlpin's malpractice claim are "the very documents which the District Court ordered to be returned to [the] Defendants." Appellant's Br. at 31; *see also* Appellant's Reply Br. at 2 (referring to the substance of various corporate documents seized from AOC by Gahafer in his capacity as AOC's receiver).

---

[8]In her malpractice suit, McAlpin alleges that she would not have agreed to the settlement or to the language in the release "had it not been for the fear of losing the Estate's AOC stock and stock options for no compensation whatsoever, the erroneous and misleading statements from [Brandon], the extreme pressure of the continued threat of being held in contempt on Gahafer's pending motion, and the erroneous representations of the value of the company." Appellant's Br. at 29.

observed, in this case "the order of civil contempt was entered post-judgment on a reopening of the action for the purpose of reconsidering the contempt motion.  Thus, the concern that it represents an interlocutory order is not present."

The motions panel also properly rejected the defendants' second argument against appellate jurisdiction – that the district court's January 15 order holding McAlpin in contempt was not a new order, but merely an enforcement of the requirements that the court imposed on McAlpin in the course of the underlying litigation.  In support of their position, the defendants cited *Whittington v. Milby*, 928 F.2d 188 (6th Cir.), *cert. denied*, 502 U.S. 883 (1991), in which this court held that the "mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought." *Id.* at 191. The defendants' argument lacks merit.  The district court's January 15 order was more than a reentry or "immaterial" revision of one of the court's earlier orders.  This panel therefore has jurisdiction to determine whether the district court exceeded the scope of its authority in holding McAlpin in contempt.

### The District Court's Jurisdiction to Issue the 1999 Orders

Because the district court held McAlpin in contempt of settlement terms that were not incorporated into any of the court's orders, we must determine whether the district court had  jurisdiction to enforce the settlement agreement in its entirety and, if not, whether the district court's contempt judgment was within the scope of its jurisdiction to enforce its prior orders against the parties.

### Jurisdiction to Enforce the Settlement Agreement

Although it had already dismissed the parties' suit with prejudice and stricken the case from its docket, the district court cited Federal Rule of Civil Procedure 60(b)(6) as authority for enforcing the Settlement Agreement against McAlpin.  Rule 60(b)(6) may, in certain circumstances, be

or ancillary. Ancillary jurisdiction exists (1) to permit a court to dispose of factually independent claims and/or (2) to enable a court to manage its proceedings, vindicate its authority, and effectuate its decrees. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379-80 (1994).

### Appellate Jurisdiction

Although on August 11, 1999, a panel of this court denied the defendants' motion to dismiss this appeal for lack of jurisdiction, the defendants reassert in their brief that we cannot hear McAlpin's challenge to the district court's order holding her in contempt because that order was not a final, appealable judgment, but merely an enforcement of the district court's earlier rulings.

The motions panel properly denied the defendants' request to dismiss this appeal. In their motion to dismiss, the defendants first argued that the district court's order of civil contempt was not appealable under *Fox v. Capital Co.*, 299 U.S. 105 (1936), in which the Supreme Court held that, "except in connection with an appeal from a final judgment or decree, a party to a suit may not review upon appeal an order fining or imprisoning him for the commission of a civil contempt."[13] As the motions panel noted in rejecting this argument, *Fox* does not preclude review of civil contempt orders generally; the rule articulated in *Fox* simply stands for the proposition that a "judgment of civil contempt is not [itself] a final decree," and therefore is not appealable in the absence of a final judgment. *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976). As this court explained in *Peabody Coal Co. v. Local Union Nos. 1734, 1508 and 1548, UMW*, 484 F.2d 78 (6th Cir. 1973), "all that is required is that a final order exist, so that the policy of preventing piecemeal litigation is served." *Id.* at 82. As the motions panel correctly

---

[13]The continuing viability of the holding in *Fox* was called into question in *Byrd v. Reno*, 180 F.3d 298, 300 (D.C. Cir. 1999).

Aware that McAlpin was, in her malpractice action against her former attorneys, asserting claims of Robert Mock's stock ownership in violation of the Settlement Agreement, AOC and its co-defendants moved the district court on November 4, 1998, pursuant to Federal Rule of Civil Procedure 70,[9] to hold McAlpin in contempt of its dismissal order and to divest McAlpin of any documents covered by the Agreement and the court's prior orders. In their motion, the defendants alleged that McAlpin had violated not only the express terms of the Settlement Agreement, but also the district court's orders of March 10, 1997,[10] July 18, 1997,[11]

---

[9]Rule 70, Judgment for Specific Acts; Vesting Title, provides, in pertinent part:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment or sequestration against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt . . . .

[10]Stating, in pertinent part, that "Receiver's counsel shall retain all copies of the Receiver's First Interim Report and the Receiver shall not disclose to anyone other than his counsel anything regarding the substance of his work as Receiver herein."

[11]Stating, in pertinent part, that "the Receiver shall return all documents taken from the defendant's premises, that the Receiver shall not disclose any document or portion thereof to anyone, and that any copies made shall also be returned to the defendants." The order also precluded McAlpin from deposing Gahafer and stated that "the Receiver shall not be required to produce any document or respond to any discovery herein."

and September 24, 1997.[12]   McAlpin objected to the defendants' motion to enforce, arguing that the district court lacked jurisdiction to grant the motion under the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994). In an order entered on January 15, 1999, the district court held, over McAlpin's objections, that "[w]hile *Kokkonen* does in some ways limit the Court's jurisdiction in voluntary dismissal cases with regard to enforcement of a settlement agreement, the Supreme Court noted that Federal Rule of Civil Procedure 60(b)(6) permits the district court to re-open a case for 'any other reason justifying relief.'" The district court then considered what it termed the "Defendants' motion to re-open the above-styled action for the limited purpose of enforcing the Court's Orders and the terms of the settlement agreement" and ordered: (1) that McAlpin be held in contempt; (2) that McAlpin "transfer to the defendants any and all documents relevant to Appalachian Oil Corporation and/or any and all documents upon which a claim against the defendants could be based; (3) that McAlpin delete "any and all claims that Robert Mock owned any shares of Appalachian Oil Corporation in [her] malpractice complaint;" and (4) that the defendants be awarded "all attorney costs and expenses generated in their enforcement of the settlement agreement."

In response to the district court's January 15 order, which McAlpin asserts was entered without jurisdiction and in violation of due process because the district court did not hold an evidentiary or other hearing before holding her in contempt, McAlpin amended her malpractice claim to remove all direct references to Robert Mock and returned to the defendants non-privileged documents that McAlpin's counsel believed were relevant to AOC or upon which a claim against

---

[12]Dismissing the action with prejudice and stating, in pertinent part, that the "Receiver, Morris Gahafer, is hereby ordered to turn over to the Defendants, any and all copies of the Receiver's First Interim Report as well as any drafts thereof or any other documents which he may have obtained or generated as a result of the performance of his duties as Receiver."

the defendants could be based. McAlpin's counsel then furnished the defendants with a privilege log identifying documents that were withheld from production under the district court's order.

McAlpin timely appealed the district court's January 15 order to the Sixth Circuit on the basis that the district court lacked jurisdiction to enforce the Settlement Agreement. Before the appeal was scheduled for hearing, however, the defendants filed a motion (entered April 1, 1999) for further contempt proceedings based on McAlpin's failure fully to comply with the order. Pursuant to this motion, the district court ruled, on May 3, 1999, that McAlpin had failed to comply with the court's January 15 order and that McAlpin would risk being held in further contempt if she did not file proof with the court of full compliance with the January 15 order within ten days of entry of the May 3 ruling. The district court further held that, based on paragraph 9 of the Settlement Agreement, McAlpin was barred from asserting any privileges that would allow her to retain any AOC-related documents. Finally, the court stated that its January 15 order directing McAlpin to delete from her malpractice complaint any claims referring to Robert Mock's stock in AOC required the removal not only of direct references to Mock, but of "any statement that infers or implies that Robert Mock owned any shares of AOC." On May 13, 1999, McAlpin filed a motion to stay the district court's proceedings pending an appeal to this panel. The district court granted McAlpin's motion on June 28, 1999, and the case was staying pending a decision by this court.

## II

This court reviews de novo the district court's determination that it had subject matter jurisdiction to enforce the terms of the settlement agreement. *See Caudill v. North American Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000) (citing *Hilliard v. United States Postal Serv.*, 814 F.2d 325, 326 (6th Cir. 1987)). Subject matter jurisdiction may be independent