### III.  CONCLUSION

Based upon the foregoing discussion, we **AFFIRM** the decision of the district court.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0151P (6th Cir.)
File Name:  02a0151p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

GREAT EARTH COMPANIES, INC., and GREAT EARTH INTERNATIONAL FRANCHISING CORP.,
    *Plaintiffs-Appellees,*

    *v.*

RICHARD SIMONS and KIMBERLY SIMONS,
    *Defendants-Appellants.*

No. 00-2033

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-72720—Paul D. Borman, District Judge.

Argued:  January 23, 2002

Decided and Filed:  May 1, 2002

Before:  BOGGS and MOORE, Circuit Judges; RUSSELL, District Judge.[*]

——————————

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** Bradley L. Smith, DYKEMA GOSSETT, Ann Arbor, Michigan, for Appellants. Robert G. Kamenec, PLUNKETT & COONEY, Bloomfield Hills, Michigan, for Appellees. **ON BRIEF:** Bradley L. Smith, DYKEMA GOSSETT, Ann Arbor, Michigan, for Appellants. Robert G. Kamenec, PLUNKETT & COONEY, Bloomfield Hills, Michigan, for Appellees.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. Appellants Richard and Kimberly Simons (the "Simonses") appeal the district court's decision compelling arbitration and enjoining prosecution of their state-court action against Great Earth Companies, Inc. and Great Earth International Franchising Corporation (collectively "Great Earth"), which alleged various claims arising from a franchise agreement between the Simonses and Great Earth. On appeal, the Simonses contend that (1) the district court should have abstained from exercising jurisdiction in deference to their pending state-court suit; (2) Great Earth was precluded from litigating arbitrability in Michigan by the franchise agreement's forum selection clause; (3) the arbitration clause was void because it was fraudulently induced; (4) the injunction of the state-court suit violated the Federal Anti-Injunction Act; and (5) Great Earth was judicially and equitably estopped from asserting that arbitration could be conducted in Michigan. For the reasons stated below, we **AFFIRM** the decision of the district court.

## I. BACKGROUND

On June 20, 1998, Appellants Richard and Kimberly Simons entered into a Franchise Agreement (the

---

Operating Officer Stephen R. Stern. J.A. at 17 (Petition); J.A. at 189 (Stern Verification). The Simonses contend that these statements are inconsistent with Great Earth's current interpretation of the contract, which would permit arbitration in Michigan.

As we have already explained, judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. *Owens*, 54 F.3d at 275. Equitable estoppel applies where a party intentionally or negligently induces a party to believe facts and the other party relies upon that belief and would be prejudiced if the first party is allowed to deny those facts. *North Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1281 (6th Cir. 1997). In the instant case, neither doctrine warrants reversal. From the record before us, it does not appear that Great Earth ever maintained, or induced the Simonses to believe, that New York was the *only* arbitral forum permitted by the Agreement. The original Southern District of New York opinion makes it clear that Great Earth maintained that arbitration in Michigan was an available alternative remedy in that action. J.A. at 111 (S.D.N.Y. Op. at 14) (noting "Great Earth's alternative position that if it does not prevail here . . . arbitration ought to take place in Michigan"). The statements cited by the Simonses merely reflect the fact that the Agreement requires arbitration in New York unless Great Earth elects to arbitrate in Michigan. Moreover, the explicit provision in the Agreement for arbitration in Michigan at the election of the Franchisor makes it difficult to conclude that the Simonses could have relied upon Great Earth's alleged representations that the Agreement permitted arbitration only in New York. Finally, judicial estoppel is clearly inappropriate because Great Earth's claim that the arbitration was required to be held in New York was not *successfully* maintained in the prior proceeding — the Southern District of New York declined to order arbitration in New York. We therefore conclude that Great Earth is neither judicially nor equitably estopped from arguing that the Agreement permits arbitration in Michigan.

In the instant case, the Eastern District of Michigan has issued a final judgment finding that the arbitration clause is valid and compelling arbitration under Article 15 of the Agreement. *See Lai*, 42 F.3d at 1302 (holding that order compelling arbitration is final judgment in independent proceeding). The Simonses' state-court suit seeks to relitigate the validity of the arbitration clause and obtain judicial resolution of the underlying dispute. An injunction of the state proceedings is necessary to protect the final judgment of the district court on this issue. *See In re Arbitration Between Nuclear Elec. Ins. Ltd. and Cent. Power & Light Co.*, 926 F. Supp. 428, 436 (S.D.N.Y. 1996) ("The courts in this district have consistently held that a stay [of state-court proceedings], when issued subsequent to or in conjunction with an order compelling arbitration concerning the same subject matter as the state-court proceeding, falls within one or both of [the 'aid of jurisdiction' exception or the relitigation exception]."); *accord TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1297 (11th Cir. 1998) ("When a federal court has ordered arbitration, a stay of the state-court action may be necessary to insure that the federal court has the opportunity to pass on the validity of the arbitration award."). We therefore conclude that the district court's injunction of the Simonses' parallel state-court proceedings did not violate the Anti-Injunction Act.

## G. Judicial Estoppel

Finally, the Simonses contend that Great Earth should be judicially or equitably estopped from maintaining that arbitration may be compelled in Michigan. The Simonses contend that Great Earth took the position in the Southern District of New York that the Agreement mandated arbitration in New York. The Simonses point to the Affidavit of attorney Phillip Ross, which states that "the Franchise Agreement . . . contains broad arbitration provisions requiring that any dispute between the parties be arbitrated in Nassau County, New York." J.A. at 191. The Simonses also cite nearly identical language in Great Earth's petition to compel arbitration, which was verified by Great Earth Chief

"Agreement") with Great Earth. Pursuant to the Agreement, Great Earth licensed the Simonses to operate a Great Earth vitamin retail outlet within the state of Michigan. Article 15.1 of the Agreement provides that "any dispute between Franchisor . . . and Franchisee . . . arising out of, relating to, or referencing this Franchise Agreement or its breach in any way . . . shall be resolved by submission to binding arbitration by the American Arbitration Association ("AAA")." Joint Appendix ("J.A.") at 23 (Agreement at 31). Article 15.3, entitled "*Law: Venue*," provides in relevant part that "[a]ll arbitration hearings and other arbitration proceedings shall take place in Nassau County, New York, or if Franchisor so elects, in the county where the principal place of business of Franchisee is then located." J.A. at 24.

On November 3, 1999, the Simonses filed suit against Great Earth in Michigan state court, alleging violations of the Michigan Franchise Investment Law ("MFIL"), common law fraud, breach of fiduciary duties, breach of duties of good faith and fair dealing, and fraudulent inducement of the Agreement's arbitration clause. Although Great Earth filed a motion in the state-court action to dismiss or stay the proceedings and to compel arbitration in New York pursuant to the Agreement, Great Earth abandoned this motion before the scheduled hearing. Great Earth then filed an independent petition to compel arbitration in the U.S. District Court for the Southern District of New York ("Southern District of New York"). On February 10, 2000, the Southern District of New York entered a temporary restraining order prohibiting the Simonses from proceeding in the Michigan state suit and ordering them to show cause why an order compelling arbitration under § 4 of the Federal Arbitration Act ("FAA") should not be issued.

A hearing was held on March 16, 2000, to receive testimony on the issue of whether the Simonses were fraudulently induced to sign the arbitration agreement. The Simonses argued that the Offering Circular provided to them by Great Earth in early June 1998 fraudulently represented that any provision in the Franchise Agreement requiring

arbitration or litigation outside of Michigan was void and unenforceable by Great Earth, because such provision was in conflict with rights conferred to franchisees by the MFIL. The Offering Circular contained disclosures required by the Federal Trade Commission and the State of Michigan, and was accompanied by a sample franchise agreement. One of the disclosures contained in the Offering Circular, entitled an "Addendum for Michigan Franchisees," states:

> THE STATE OF MICHIGAN PROHIBITS CERTAIN UNFAIR PROVISIONS THAT ARE SOMETIMES IN [F]RANCHISE DOCUMENTS. IF ANY OF THE FOLLOWING PROVISIONS ARE IN THESE FRANCHISE DOCUMENTS, THE PROVISIONS ARE VOID AND CANNOT BE ENFORCED AGAINST YOU.
> . . . .
> (f) A provision requiring that arbitration or litigation be conducted outside this state.

J.A. at 182 (S.D.N.Y. Amended Op. at 9 (quoting Offering Circular at 34)). As noted above, the Franchise Agreement did contain a provision requiring disputes to be arbitrated in New York. The Simonses argued that this statement was a knowing misrepresentation, because Great Earth knew at the time that it would attempt to enforce the Agreement's forum selection clause in the event of a dispute, notwithstanding its statement in the Offering Circular. Richard Simons testified at the hearing and stated that it was his understanding at the time he signed the Agreement that disputes would be arbitrated in Michigan.

The Southern District of New York concluded that the Simonses had shown that the agreement to arbitrate outside of Michigan was induced by fraud. The court initially noted that the FAA preempted the MFIL's prohibition on agreements to arbitrate outside of Michigan, and that the Agreement's venue clause therefore was not voided by Michigan law. Nevertheless, the court concluded that Great Earth had fraudulently induced the Simonses to agree to the forum selection clause by knowingly misrepresenting in the Offering Circular that it would not seek arbitration outside of

issue under the Anti-Injunction Act. *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1377 (9th Cir. 1997). "However, the fact that an injunction may issue under the Act does not mean that it must issue." *Id.* Therefore, the district court's "decision whether to issue an injunction that does not violate the Act is reviewed for an abuse of discretion." *Id.*

Although the FAA requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate, 9 U.S.C. § 3, "it does not specifically authorize federal courts to stay proceedings pending in state courts." *Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176, 1180 (11th Cir. 1981) (*overruled on other grounds by Baltin v. Alaron Trading Corp.*, 128 F.3d 1466 (11th Cir. 1997)). Therefore, the district court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti-Injunction Act. 28 U.S.C. § 2283. The Act states:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The enumerated exceptions to the Act's prohibition on injunctions against pending state-court actions "are narrow in their application and 'should not be enlarged by loose statutory construction.'" *Hatcher v. Avis Rent-A-Car Sys., Inc.*, 152 F.3d 540, 542 (6th Cir. 1998) (quoting *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)).

The injunction herein properly falls within the exception for injunctions "necessary to protect or effectuate [the district court's] judgments," 28 U.S.C. § 2283, often referred to as the relitigation exception. "[A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988).

motion urging the Southern District of New York to rescind the portion of its original order compelling the parties to arbitrate in Michigan. Under the Simonses' current interpretation of the contract, the Southern District of New York would have been the proper forum in which to determine whether the parties should proceed to arbitration in Michigan. Nevertheless, when the Southern District of New York did determine that arbitration should proceed in Michigan, the Simonses requested that "the Court withdraw its direction that the parties . . . proceed to arbitration in Michigan, or at a minimum, set forth its determination on whether it has personal jurisdiction over the Simons after having found that they were fraudulently induced into signing the arbitration clause." J.A. at 115 (S.D.N.Y. 5/17/00 Order). Thus, when confronted with an unfavorable ruling from the Southern District of New York on Great Earth's motion to compel arbitration in Michigan, the Simonses contested the jurisdiction of that court to order arbitration based upon the fact that they had not agreed to the New York forum. Now, the Simonses contend that the Southern District of New York is the *only* court with jurisdiction to order arbitration. Having successfully argued in a prior proceeding that the Southern District of New York should not determine the question of arbitrability in Michigan, the Simonses cannot now resurrect the New York forum through Article 15.7(a). To hold otherwise would allow the Simonses to defend diametrically opposed interpretations of the Agreement — one that requires litigation in New York and one that prohibits litigation there. We therefore decline to enforce the venue provision of Article 15.7(a) in the manner urged by the Simonses.

## F. Anti-Injunction Act

The Simonses contend that the Eastern District of Michigan order enjoining the parties from proceeding with the parallel state-court action violated the Anti-Injunction Act. 22 U.S.C. § 2283. The district court concluded that the injunction was within its authority under Supreme Court precedent and the language of the Act itself. We review de novo the district court's legal determination as to whether an injunction may

Michigan. The court therefore refused to order arbitration in New York. The court went on to note that "[w]ere we writing on a blank slate, we would find that there was no meeting of the minds not only with respect to the arbitration clause's forum selection provision, but also with respect to the arbitration clause as a whole." J.A. at 111 (S.D.N.Y. Op. 3/24/00). The court explained, however, that

> in light of Mr. Simons' testimony at the March 16 hearing, that it was his understanding when signing the Agreement that he had agreed that disputes would be arbitrated in Michigan, in light of Great Earth's alternative position that if it does not prevail here and successfully compel arbitration in New York, arbitration ought to take place in Michigan, and in light of *Laxmi Investments, LLC v. Golf USA*, 193 F.3d 1095 (9th [C]ir. 1999) (directing arbitration in California where parties were in dispute over forum and had not clearly agreed to arbitrate in Oklahoma), and *Alphagraphics Franchising, Inc.*, 840 F. Supp. at 708 (compelling arbitration in Michigan even though arbitration forum selection clause was unenforceable against franchisees due to fraud in inducement), Great Earth and the Simons are directed to arbitrate their dispute in Michigan.

J.A. at 111.

The Simonses moved for reconsideration, requesting that the district court rescind its order compelling the parties to arbitrate in Michigan. The court wrote that it was "somewhat surprised by [the motion's] filing in light of the testimony of Mr. Richard Simon[s]." J.A. at 116 (S.D.N.Y. 5/17/00 Order). Nevertheless, the court withdrew the portion of its earlier opinion ordering arbitration in Michigan, "as it was unnecessary for the resolution of the precise question presented." J.A. at 116. The court noted, however, that "the sworn testimony of Mr. Simons remains for further use in further forums." J.A. at 117. On May 17, 2000, the court issued an amended opinion, which denied Great Earth's

petition to compel arbitration in New York but ordered no other action.

The Simonses proceeded with their Michigan state-court action.  On May 25, 2000, the Simonses filed a motion for partial summary judgment in the state-court suit.  Hearing on the motion was scheduled for June 21, 2000.  On June 16, 2000, Great Earth filed a petition in the U.S. District Court for the Eastern District of Michigan ("Eastern District of Michigan") to compel arbitration in Washtenaw County, Michigan, and to enjoin the state-court proceedings.  Oral argument was held on the motion on July 20, 2000.  In an Opinion and Order dated July 31, 2000, the Eastern District of Michigan granted the petition to compel arbitration and enjoined the Simonses from prosecuting the pending state-court action.  The Simonses filed a timely notice of appeal.

## II.  ANALYSIS

### A.  Jurisdiction

Appellate jurisdiction over district court orders concerning arbitration is governed by section 16 of the FAA.  9 U.S.C. § 16.  Section 16 provides in relevant part:

  (a)  An appeal may be taken from —
       . . . .
       (3)  a final decision with respect to an arbitration that is subject to this title.
  (b)  Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order —
       (1)  granting a stay of any action under section 3 of this title;
       (2)  directing arbitration to proceed under section 4 of this title;
       (3)  compelling arbitration under section 206 of this title . . . .

9 U.S.C. § 16.  "Section 16(a)(3) . . . preserves immediate appeal of any 'final decision with respect to an arbitration,'

JURISDICTION OVER THE DISPUTE, THE PROCEEDING MAY BE INITIATED IN, AND ONLY IN, A COURT OF NEW YORK HAVING COMPETENT JURISDICTION IN OR ABOUT NEW YORK COUNTY, NEW YORK.

J.A. at 24-25 (Agreement at 32-33).  Article 15.2 sets forth disputes that are not subject to arbitration.  Article 15.2(e) includes as an item not subject to arbitration "[a]ny dispute in any way relating to the scope, application or enforceability of this Article 15 [the arbitration provision]."  J.A. at 31.  Unlike Article 15.3, which specifies the county of the Franchisee's principal place of business as an alternate forum that may be selected by the Franchisor for the arbitration proceedings themselves, Article 15.7(a) does not provide an alternate forum in Michigan for court proceedings *to enforce* the agreement to arbitrate set forth in Article 15.2.  The Simonses claim that the provision in Article 15.7(a) is a valid forum selection clause, and that Great Earth is therefore precluded from seeking an order to compel arbitration from the Eastern District of Michigan.

We conclude that the Simonses are judicially estopped from enforcing the forum selection clause of Article 15.7(a) in this manner.  "Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding."  *United States v. Owens*, 54 F.3d 271, 275 (6th Cir. 1995) (quotation omitted).  In their appellate brief, the Simonses contend that Article 15.7(a) "clearly requires Great Earth to bring 'Any dispute in any way relating to the scope, application, or enforceability of this Article 15' . . . in and only in the U.S. Southern District of New York."  Appellants' Br. at 18.  However, this is exactly what Great Earth did when it filed its first petition to compel arbitration in the Southern District of New York.  In opposing that petition, the Simonses successfully argued to the Southern District of New York that Great Earth could not enforce any provision requiring arbitration *or litigation* outside of Michigan.  J.A. at 183 (S.D.N.Y. Amended Op. at 10).  The inconsistency of the Simonses' positions is demonstrated by their successful

(Amended Op. at 12). This contention, however, goes to the validity of the contract as a whole, not the arbitration agreement. Such claims are to be brought before the arbitrator, not the district court in deciding a petition to compel arbitration. *Prima Paint*, 388 U.S. at 404. We conclude that the Simonses have not placed the validity of the arbitration agreement "in issue," and that it was therefore proper for the district court to compel arbitration.

## D.  Preclusion

The Simonses further contend that the Southern District of New York held that the arbitration clause as a whole was void, and that principles of res judicata therefore preclude Great Earth from pursuing enforcement of the arbitration clause. This argument misreads the Southern District of New York opinion, which explicitly "d[id] not decide . . . the forum where the parties shall resolve their underlying dispute." J.A. at 187 (S.D.N.Y. Amended Op. at 14). The court merely determined that Great Earth could not compel arbitration *in New York*. In its order granting the Simonses' request for reconsideration, the court made clear that it was "leav[ing] the issue of the alterative forum to be resolved in yet a future litigation." J.A. at 117. Therefore, the Southern District of New York order did not have preclusive effect upon Great Earth's motion to compel arbitration in Michigan.

## E.    Whether the Written Agreement Permits Arbitration in Michigan

The Simonses next contend that Great Earth is precluded from bringing its action to compel arbitration in the Eastern District of Michigan by an additional forum selection clause found in Article 15.7(a) of the Agreement, which states:

> ANY AND ALL COURT PROCEEDINGS ARISING FROM MATTERS DESCRIBED IN SECTION 15.2 HEREOF [DISPUTES NOT SUBJECT TO ARBITRATION] SHALL BE BROUGHT IN, AND ONLY IN, THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK . . . . WHERE THERE IS NO UNITED STATES DISTRICT COURT HAVING

regardless of whether the decision is favorable or hostile to arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86 (2000); *Arnold v. Arnold Corp.–Printed Communications for Bus.*, 920 F.2d 1269, 1275 (6th Cir. 1990). Thus, we have appellate jurisdiction over a decision with respect to arbitration if it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp.*, 531 U.S. at 86 (quotations omitted). In the instant case, arbitrability of the dispute was the sole issue before the district court. The order below, therefore, "plainly disposed of the entire case on the merits and left no part of it pending before the court." *Id.* The fact that a separate but related state-court action remains pending does not alter the fact that "[t]he decision to compel arbitration settled everything that was *before the district court* in this case." *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1302 (9th Cir. 1994) (emphasis added) (holding that district court order compelling arbitration and enjoining related state-court suit was final appealable order), *cert. denied*, 513 U.S. 871 (1995). The order of the Eastern District of Michigan in the instant case "indicate[s] a final decision on the arbitrability issue and leave[s] nothing more for the court to do." *ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091, 1098 (6th Cir. 2002). We therefore have jurisdiction to hear the instant appeal.

## B.  Abstention

The Simonses contend that the Eastern District of Michigan erred in declining to abstain from exercising jurisdiction, pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), in deference to the concurrent state-court proceedings concerning the same dispute. The Eastern District of Michigan held that abstention was inappropriate, given the presence of federal-law issues and the strong federal policy in favor of arbitration. A district court's decision whether to abstain from exercising jurisdiction in deference

to state-court proceedings is reviewed for abuse of discretion. *Moses H. Cone*, 460 U.S. at 19.

In *Colorado River*, the Supreme Court explained that a district court may sometimes be justified in abstaining from exercising jurisdiction in deference to a parallel state-court proceeding. The Court noted, however, that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. The Court explained that abstention was "justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* (quotation omitted). The decision to dismiss a federal action because of a parallel state-court action rests "on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

The Supreme Court and this Circuit have identified a number of factors which district courts must consider when determining whether abstention is appropriate under the *Colorado River* doctrine. The list of relevant factors includes:

(1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001) (quotation omitted) (compiling factors discussed in Supreme Court cases).

Applying these factors, both the Supreme Court and this circuit have held that abstention is inappropriate in circumstances substantially similar to those presented by the

J.A. at 24 (Agreement at 32) (emphasis added). This clause evinces a clear intention that the failure of a distinct part of Article 15, such as the venue provision, should not infect other parts of the arbitration provision. Such an interpretation, moreover, is consistent with the general proposition that "doubts as to the parties' intentions should be resolved in favor of arbitration." *J.D. Byrider*, 228 F.3d at 714.

In addition, the fact that the venue provision in Article 15.3 permits arbitration proceedings to be held in the county of the Franchisee's principal place of business "if Franchisor so elects" demonstrates that both parties were willing at the time of contracting to arbitrate in Michigan should the New York venue be unavailable. J.A. at 24 (Agreement at 32). This fact distinguishes the instant case from *National Iranian Oil Co.*, which found that an arbitral forum selection clause was not severable where the contract made it clear that "were Iran [the specified forum] to become inconvenient or unacceptable to one or both parties, no other forum was to be available unless mutually agreed upon." 817 F.2d at 334. In that case, it was clear that the parties conditioned the agreement to arbitrate on their mutual agreement as to the venue for arbitration. In contrast, by the terms of the Agreement herein, the Simonses reserved no right to object to arbitration in Michigan if Great Earth requested this forum. There can be little doubt, therefore, that the contract evinced a mutual understanding that arbitration in Michigan could be enforced at the insistence of Great Earth, notwithstanding the unavailability of the New York forum.

The Simonses have not indicated any countervailing facts that would suggest a genuine issue as to whether the arbitration agreement was intended to be severable from the venue clause. The Simonses do not point to any evidence of the parties' intentions at the time of contracting other than that discussed above. The Simonses, in their reply brief, do cite the finding of the Southern District of New York that they would not have signed the Agreement if they had been required to litigate or arbitrate in New York. J.A. at 185

agreed to arbitrate *in New York*.[1] Counsel for the Simonses confirmed before the Eastern District of Michigan and at oral argument before this panel that it was the Simonses' original understanding that they were agreeing to arbitrate in Michigan. This testimony clearly illustrates that the Simonses were not deceived as to whether the Agreement required that disputes be settled by an arbitrator, as opposed to a court of law. The misrepresentation went only to the location of the arbitration.

Moreover, the terms of the Agreement itself make it clear that the parties intended the agreement to arbitrate to survive, even if certain parts of Article 15 (the arbitration and venue section) were found to be unenforceable. Article 15.4 provides that:

> The provisions of this Article 15 shall be construed as independent of any other covenant or provision of this Franchise Agreement; provided, however, that if a court of competent jurisdiction determines that *any of these provisions are unlawful in any way, the court shall modify or interpret those provisions to the minimum extent necessary to cause them to comply with the law.*

---

[1]For the first time in their reply brief, the Simonses argue that we may not consider the testimony of Mr. Simons because it is not in the record. No transcript of his testimony is provided in the record we obtained from the Eastern District of Michigan. It is unclear whether the district court had a transcript of this testimony, although one of Great Earth's filings below indicates that a transcript of the testimony was filed with the district court. J.A. at 196 (Brief in Response to Motion to Dismiss Petition). Nevertheless, the record contains the New York district court's account of Mr. Simons's testimony, which has not been disputed by the Simonses. Moreover, the transcript of oral argument in the Eastern District of Michigan is included in the record. During this argument, counsel for the Simonses again confirmed that it was the Simonses' original understanding that they agreed to arbitrate in Michigan. J.A. at 223 (Hr'g Tr. at 6). In addition, the content of this testimony was conceded at oral argument on appeal. We therefore find sufficient basis in the record to consider the testimony offered by Mr. Simons in the Southern District of New York.

instant case. *Moses H. Cone*, 460 U.S. at 29; *Cohen*, 276 F.3d at 209 (holding abstention was inappropriate in action by investment company to compel arbitration following filing of state-court fraud and conversion action by executor of former client's estate). In *Moses H. Cone*, the Supreme Court held that it was an abuse of discretion for the district court to deny a motion to compel arbitration pending resolution of a state-court action involving the matter for which arbitration was sought. The Court noted that the first two factors were irrelevant, as the case did not involve jurisdiction over any res or property and the federal and state forums were equally convenient. *Id.* at 19. The Court then concluded that there was no danger of piecemeal litigation. To the extent piecemeal litigation was at issue, it was because the FAA compelled part of the dispute to be heard by an arbitrator. Whether or not the litigation proceeded in both the arbitral and state-court fora, however, had nothing to do with "*which court* decides the question of arbitrability." *Id.* at 20. The Court next observed that the fact that the federal-court action was filed nineteen days after the state court assumed jurisdiction did not weigh heavily in favor of abstention, because the party seeking arbitration had no reason to file the federal action until after its opponent filed a lawsuit in state court, thus indicating its refusal to abide by the arbitration agreement. *Id.* at 21. Instead, the Court counseled that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.* Since no substantial proceedings had taken place in the state suit — in contrast to the federal suit which had advanced significantly — the Court found this factor weighed against abstention. *Id.* at 22. In addition, the Court emphasized the fact that the controversy was governed by the FAA's provision that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2, and that this statute expressed a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary," as important factors weighing against abstention. *Id.* at 24.

In all significant respects, the circumstances presented in the instant case are the same as those considered by the Court in *Moses H. Cone*, and that decision should therefore control. As in *Moses H. Cone*, the first two factors are irrelevant, as there is no res and neither party has argued that either the federal or state forum, both in Michigan, is more convenient. Although it appears that Great Earth waited somewhat longer than nineteen days following the filing of the state-court action to initiate its petition in federal court, we are mindful of the Supreme Court's observation that the relative progress of the proceedings is at least as important as the order of filing. *Id.* at 21. In the instant case, the district court has completely resolved the issue of arbitrability and ordered arbitration. In contrast, there is no indication that any significant proceedings have taken place in the state court.

The Simonses argue that the instant case is distinguishable from *Moses H. Cone*, because state law governs the issue of whether the arbitration clause was fraudulently induced. However, the Supreme Court has made clear that the fact that a case presents state-law issues, by itself, will usually not present the kind of "exceptional circumstances" required for abstention. *Id.* at 25 (quotation omitted). "Although in some rare circumstances the presence of state-law issues may weigh in favor of . . . surrender, the presence of federal-law issues must always be a major consideration weighing against surrender." *Id.* at 26 (footnote omitted). In addition, although state law may dictate the standards for generally applicable contract defenses, such as fraudulent inducement, the FAA governs the enforceability of arbitration clauses generally, *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996), and expresses a "liberal federal policy favoring arbitration agreements" that must be taken into account even when state-law issues are presented. *Moses H. Cone*, 460 U.S. at 24. The instant case therefore presents a mix of federal- and state-law issues. Consequently, the presence of state-law issues does not weigh heavily in favor of abstention.

The Simonses' further attempts to distinguish their case are unavailing. They contend that Great Earth's rights would be

whether the agreement to arbitrate all disputes was separate and severable from the forum selection clause. *National Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 333 (5th Cir.) (holding that where forum selection clause was void for impossibility, enforceability of arbitration agreement required petitioning party to "show that the venue provision is severable from the rest of the arbitration agreement"), *cert. denied*, 484 U.S. 943 (1987); *accord Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 528-29 (1st Cir. 1985) ("In this case, the arbitration clause is separable from the contract and is not rescinded by Beneficial's attempt to rescind the entire contract based on mutual mistake and frustration of purpose."). This conclusion follows from the straightforward application of the "general rule of contract law," recognized by Michigan courts, that where provisions of a contract are rescinded due to fraudulent inducement, "the failure of a distinct part of a contract does not void valid, severable provisions." *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 534 N.W.2d 217, 220 (Mich. Ct. App. 1995). "Whether the agreement to arbitrate is entire or severable turns on the parties' intent at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances." *National Iranian Oil Co.*, 817 F.2d at 333; *see also Samuel D. Begola Servs.*, 534 N.W.2d at 220; *Brucker v. McKinlay Transp., Inc.*, 557 N.W.2d 536, 540 (Mich. 1997) (finding arbitration agreement enforceable, notwithstanding fact that provision in arbitration clause allowing circuit court to interpret contract was invalid, because clear intent of parties was to arbitrate disputes).

We conclude that the Eastern District of Michigan properly determined that the parties intended the arbitration clause to be severable from the provision requiring arbitration in New York. Mr. Simons conceded in the hearing before the Southern District of New York that he had agreed to arbitrate disputes with Great Earth, and merely argued that he had not

arbitration clause], such as fraud, duress, or unconscionability." *Id.* at 687. In assessing whether an agreement to arbitrate has been made, moreover, "[c]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *J.D. Byrider*, 228 F.3d at 714.

The Supreme Court has explained that in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole:

> if the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the 'making' of the agreement to arbitrate — the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Once the district court determines that a valid agreement to arbitrate exists, challenges to other distinct parts of the contract are to be resolved by the arbitrator. *Id.* In order to place the validity of the agreement to arbitrate in issue, therefore, the party opposing the petition to compel arbitration must state a "well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement*, that would provide grounds for the revocation of the agreement to arbitrate." *Arnold*, 920 F.2d at 1278.

In the instant case, there is no question that Great Earth fraudulently induced the Simonses to agree to the arbitral forum selection clause contained in Article 15.3, which provides that arbitration of disputes take place in New York. The Southern District of New York explicitly so held. The validity of the arbitration agreement, therefore, turns on

adequately protected by state-court proceedings, because state courts are bound to enforce the FAA. We have previously noted, however, that "[t]he fact that the state court will protect [the defendant's] rights under the FAA . . . does not provide the 'exceptional' circumstances necessary to justify" abstention. *Cohen*, 276 F.3d at 209.

The Simonses also contend that abstention is warranted because Great Earth's strategy of filing petitions in multiple federal courts was "vexatious." *See Moses H. Cone*, 460 U.S. at 17 n.20 (noting that vexatious nature of litigation may be relevant to abstention, but finding it unnecessary to consider the issue). The Simonses have not shown any evidence, however, that the decision to pursue an arbitration order in federal rather than state court was vexatious, rather than merely a strategic decision to protect Great Earth's rights. Although one may conclude that the decision to litigate the issue *in New York* was in bad faith, the Simonses have already prevailed in foreclosing that forum.

Finally, the Simonses suggest that respect for the principles underlying removal jurisdiction warrants abstention in this instance because Great Earth initiated independent proceedings to compel arbitration rather than remove the state-court case to federal district court. The Simonses have not identified any cases from this circuit or the Supreme Court that have found this factor to weigh significantly in favor of abstention. Indeed, as the Simonses quote in their brief, the Supreme Court has explicitly noted that it has never expressed the view "that the decision of a party to spurn removal and bring a separate suit in federal court invariably warrants the stay or dismissal of the suit under the *Colorado River* doctrine." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 290 (1988). Even if this factor did weigh in favor of abstention, it is not by itself sufficient to show that the district court abused its discretion in finding that abstention was not warranted. *See id.* (noting that in the absence of other circumstances warranting a stay, circumvention of removal statute did not require district court to abstain).

As the above discussion makes clear, the balance of relevant factors does not weigh heavily in favor of abstention in the instant case. We therefore conclude that the district court did not abuse its discretion in declining to abstain from exercising jurisdiction over the present matter.

## C. Petition to Compel Arbitration in Michigan

The Simonses next dispute the Eastern District of Michigan's finding that a valid agreement to arbitrate their dispute in Michigan existed. The Simonses' chief contention is that Great Earth's fraudulent inducement of the forum selection clause renders the entire contract, or at least the entire arbitration clause, voidable as a matter of law. They further claim that Great Earth's misrepresentations as to the forum selection clause negate any meeting of the minds in relation to the agreement to arbitrate. The district court requested briefing and heard oral argument as to the validity of the arbitration agreement. The court found that the Simonses had not demonstrated a genuine issue as to the validity of the arbitration clause, and granted Great Earth's petition to compel arbitration without a trial.

We review the ruling of the district court compelling arbitration de novo. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), *cert. denied*, 531 U.S. 1148 (2001). Section 4 of the FAA sets forth the procedure to be followed by the district court when presented with a petition to compel arbitration. That section provides, in relevant part, that

> [a] party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the

> making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. Thus, "[w]hen asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue." *Stout*, 228 F.3d at 714. If the district court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration. If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question. 9 U.S.C. § 4. In order to show that the validity of the agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir.), *cert. denied*, 522 U.S. 948 (1997). The required showing mirrors that required to withstand summary judgment in a civil suit. *Id.* In reviewing the district court opinion, therefore, we view all facts and inferences drawn therefrom in the light most favorable to the Simonses, and determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists. *See Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)), *cert. denied*, 528 U.S. 1157 (2000).

Section 2 of the Act governs the validity of arbitration agreements. It provides that a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In determining whether the parties have made a valid arbitration agreement, "state law may be applied *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," although the FAA preempts "state laws applicable *only* to arbitration provisions." *Casarotto*, 517 U.S. at 686-87 (quotation omitted). Therefore, state law governs "generally applicable contract defenses [to an