RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0048p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

202 NORTH MONROE, LLC,

*Plaintiff*,

CITY OF ROCKFORD,

*Plaintiff-Appellant*,

*v.*

No. 16-1982

CALEB SOWER; KRISTINE SOWER; LARRY VIS; ELSIE
WAYMAN; JIM JENNELLE; SUSIE JENNELLE; DALE
GOOSSEN; LINDA GOOSSEN; JACK MCCLENNEN; AMY
HADLEY; NEIGHBORS FOR NEIGHBORHOOD, INC.,

*Defendants-Appellees*,

FRED HAACK; ANGIE HAACK; KENNETH E. PHILLIPS;
TROY WINTERS; MICHELLE WINTERS,

*Third Parties-Appellees*.

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:16-cv-00325—Janet T. Neff, District Judge.

Argued: February 2, 2017

Decided and Filed: March 1, 2017

Before: GIBBONS, COOK, and KETHLEDGE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Mary Massaron, PLUNKETT COONEY, Bloomfield Hills, Michigan, for
Appellant. Michael D. Homier, FOSTER, SWIFT, COLLINS & SMITH, P.C., Grand Rapids,
Michigan, for Appellees. **ON BRIEF:** Mary Massaron, PLUNKETT COONEY, Bloomfield

Hills, Michigan, for Appellant.  Michael D. Homier, FOSTER, SWIFT, COLLINS & SMITH, P.C., Grand Rapids, Michigan, for Appellees.

————————————

**OPINION**

————————————

JULIA SMITH GIBBONS, Circuit Judge.  After the City of Rockford (the City) failed to approve a zoning petition for property owned by 202 North Monroe, LLC (202 North Monroe), the developer sued, challenging the constitutionality of the zoning-approval process.  After a number of individuals living in the vicinity of the proposed development attempted and were denied the opportunity to intervene in the litigation, the City and 202 North Monroe settled their dispute and a federal district court entered a consent judgment under which the City agreed to rezone the property and 202 North Monroe agreed to address several environmental issues.

Disappointed with this result, the proposed intervenors, other residents, and a local neighborhood association (collectively the Neighbors) sued 202 North Monroe and the City in state court, seeking a declaration that the City failed to comply with Michigan law when it approved the settlement agreement. 202 North Monroe and the City (now collectively plaintiffs) responded by filing this action in federal district court to enjoin the state proceeding as an improper attack on the prior consent judgment.  The district court dismissed the case for lack of jurisdiction and the City now appeals.  Although the district court could have exercised ancillary jurisdiction over the latter federal suit, we affirm the dismissal of plaintiffs' complaint because the Anti-Injunction Act bars a federal court from enjoining the Neighbors' state-court action.

I.

202 North Monroe owns property in the City of Rockford that it intends to develop into residential condominiums.  In order to do so, it sought to have the City rezone the property from "R-2 Single Family Residential" to "Planned Unit Development."  A group of residents challenged the proposal by filing a protest petition with the City.  This triggered a special approval procedure under Section 403 of the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*, which requires a super majority (at least two-thirds) of city council members to

vote in favor of the zoning proposal.  The proposal subsequently failed when only three of the council's five members voted to rezone the property.

In July 2015, 202 North Monroe sued the City in state court, alleging that the City violated its substantive-due-process rights and that the City's actions constituted an unconstitutional regulatory taking of its property.  The City timely removed the case to the United States District Court for the Western District of Michigan.

In federal district court, Caleb Sower, Kristine Sower, and Neighbors for Neighborhood, Inc., sought to intervene as defendants and cross-plaintiffs.  They sought intervention as a matter of right, arguing that the resolution of the case would impede their ability to oppose rezoning and suggesting that, by settling the case, the City would be able to rezone the property without satisfying the super-majority approval requirement still in place as a result of their protest petition.  They also sought permissive intervention, arguing that their proposed cross-claim shared a common question of law or fact with 202 North Monroe's claims against the City.

The district court denied the motion to intervene in October 2015.  The court held that the intervenors' proposed interest of "defeating the rezoning application" was moot because the City had denied 202 North Monroe's application and that any concern that the City's denial could be overturned was "too generalized to support a claim of intervention of right."  No. 1:15-cv-785, DE 26, Page ID 437.  The district court also denied permissive intervention.

In December 2015, the City and 202 North Monroe entered into mediation and eventually reached a settlement.  The city council approved the settlement by a simple majority in January 2016 after discussing the pending litigation in a closed session.  On February 1, 2016, the district court approved the settlement by entering a consent judgment that "ordered, adjudged, and decreed" that:

1.      The Subject Property is hereby rezoned from R-2 to PUD.

2.      The Clerk of the City of Rockford shall cause the Zoning Ordinance Map to be amended to identify the zoning classification of the Subject Property as PUD.

3.      The Planned Unit Development Agreement (the "PUD Agreement") attached hereto as Exhibit B is hereby approved.

4.      Within thirty (30) days after the date of this Judgment, the Clerk of the City of Rockford shall cause the PUD Agreement to be recorded with the Kent County Register of Deeds.

. . .

14.     All of Plaintiff's claims as articulated in the Complaint are dismissed with prejudice.

No. 1:15-cv-785, DE 32, Page ID 510–12.  It also placed certain obligations on 202 North Monroe with respect to environmental issues at the property.  The consent judgment was signed by the district judge and stated "[t]his Judgment resolves the last pending claim and closes the case." *Id.* at 512.

On March 14, 2016, the Neighbors filed a two-count complaint in Kent County Circuit Court, claiming that the City had circumvented provisions of the MZEA and the City's own zoning ordinances by "rezoning . . . the Property through the Consent Judgment."  No. 1:16-cv-325, DE 1-1, Page ID 16.  They sought both declaratory and injunctive relief on the grounds that the City was required to provide notice and to conduct a public hearing with respect to any settlement purporting to rezone property and was required to approve any such settlement by a two-thirds super majority when a protest petition had been filed.  The Neighbors also filed a motion for a preliminary injunction.

On March 30, 2016, the City and 202 North Monroe filed a complaint and emergency motion for a preliminary injunction against the Neighbors in the Western District of Michigan, asking the district court to enjoin the Kent County Circuit Court from granting the Neighbors' pending motion for a preliminary injunction and to enjoin the Neighbors from otherwise seeking to invalidate the prior federal consent judgment under the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283.  The Neighbors filed a counterclaim, seeking a declaration that rezoning property through a consent judgment was not authorized by Michigan law or the City's zoning ordinance.  All parties then filed answers to the claims against them.

Among other things, the Neighbors argued that plaintiffs' complaint was barred by a lack of jurisdiction.

After hearing oral argument on the jurisdictional question, the district court ruled that it lacked jurisdiction to enjoin the state-court proceeding. The court noted the broad prohibition on such action under the Anti-Injunction Act and concluded that the "relitigation exception" to the Act did not apply because the issue now being litigated in state court was never argued, raised, or decided in the prior federal proceeding and because the Neighbors lacked the requisite connection to the prior federal litigation so as to be bound by the consent judgment. The district court also noted that "principles of equity, comity, and federalism" favored "great restraint" in deciding whether to enjoin the state court. A subsequent order dismissed the complaint for lack of jurisdiction and denied the motion for a preliminary injunction as moot. The City filed a timely notice of appeal.

II.

The district court dismissed this case after finding that it lacked subject-matter jurisdiction under the Anti-Injunction Act. We review *de novo* the decision to dismiss for lack of subject-matter jurisdiction. *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004). We also review *de novo* the legal determination of "whether an injunction *may* issue under the Anti-Injunction Act." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 843 (6th Cir. 2009) (quoting *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002) (emphasis added)). In doing so, we first consider whether there was an affirmative basis on which the district court could have exercised its subject-matter jurisdiction. We then evaluate the effect of the Anti-Injunction Act on the district court's ability to grant plaintiffs' requested relief.

A.

The City asserts that the district court could have exercised ancillary jurisdiction over the present action because "the district court had federal question jurisdiction over the original action and [the present] action was filed to preserve the federal court's judgment in the original action." CA6 R. 20, at 1. Ancillary jurisdiction allows a federal court of otherwise limited jurisdiction to consider "some matters (otherwise beyond their competence) that are incidental to the other

matters properly before them." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). Ancillary jurisdiction exists, in part, "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 380; *see also Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000).

In the context of settlement agreements, a federal court can exercise ancillary jurisdiction over a subsequent action involving the settlement only if the settlement terms are "made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen*, 511 U.S. at 381. In such cases, any challenge to the agreement is a challenge to the court's order and the court can exercise ancillary jurisdiction to effectuate its decree. *Id.* This, however, is a narrow basis for subject-matter jurisdiction. *See McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 502 (6th Cir. 2000).

In *Kokkonen*, the parties settled a prior federal case on terms that they "recited, on the record, before the District Judge in chambers." *Kokkonen*, 511 U.S. at 376. They then executed a "Stipulation and Order of Dismissal with Prejudice" pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii). *Id.* at 376–77. This document, however, did not refer to the settlement agreement or its terms and did not explicitly empower the district court to enforce the settlement. *Id.* at 377. On these facts, a unanimous Court refused to find ancillary jurisdiction to enforce the settlement. *Id.* at 381–82. Similarly, in *McAlpin*, we concluded that a district court order referencing a single term of a twenty-page settlement agreement was insufficient to establish ancillary jurisdiction. *McAlpin*, 229 F.3d at 502; *see also Caudill*, 200 F.3d at 916 (finding that the phrase "pursuant to the terms of the Settlement" failed to incorporate the agreement's terms).

Here, the parties do not dispute the district court's federal-question jurisdiction over the dispute that led to the consent judgment. And unlike the factual scenarios in *Kokkonen*, *McAlpin*, and *Caudill*, this consent judgment falls squarely within the *Kokkonen* Court's test for ancillary jurisdiction. By listing the fourteen terms of the settlement agreement in its consent judgment, the district court explicitly incorporated the parties' entire agreement. It does not matter that the district court did not explicitly state that it intended to retain jurisdiction over the agreement; incorporating the terms of the settlement was sufficient. *See Kokkonen*, 511 U.S. at

381.  Thus, the district court could have exercised ancillary jurisdiction over plaintiffs' present complaint seeking to effectuate the terms of the prior consent judgment.[1]

B.

The All Writs Act empowers a federal court to issue "all writs necessary or appropriate in aid of [its] respective jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651.  This authority, however, is not unfettered.  "[A]ny injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to [the Anti-Injunction Act] if it is to be upheld." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970).  Absent an exception, there is an "absolute prohibition [against] enjoining state court proceedings." *Id.* at 286; *see also Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004).  The Anti-Injunction Act provides three exceptions:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as [1] expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments.[2]

28 U.S.C. § 2283.  These exceptions are narrow and "should not be enlarged by loose statutory construction" because "the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts." *Atl. Coast Line R.R. Co.*, 398 U.S. at 287; *see also Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011).  Although the City argues on appeal that all three exceptions to the Anti-Injunction Act apply, the City waived its ability to argue the first two exceptions when it failed to make such an argument before the district court. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 614–15 (6th Cir. 2014).  Thus, we consider only the relitigation exception here.

---

[1]The Neighbors argue that even if the district court had ancillary jurisdiction, it had the discretion not to exercise such jurisdiction.  Although they are correct that ancillary jurisdiction is discretionary, *see Coleman v. Casey Cty. Bd. of Educ.*, 686 F.2d 428, 430 (6th Cir. 1982) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)), the record does not indicate that the district court made any evaluation or decision with respect to its ancillary jurisdiction.  And because we conclude that the Anti-Injunction Act bars the district court from acting here, we need not give the district court an opportunity to exercise its discretion with respect to ancillary jurisdiction.

[2]We refer to the third exception by its more-common name, the relitigation exception. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988).

The relitigation exception is intended to implement "well-recognized concepts of *res judicata* and collateral estoppel." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988). This exception, however, "applies only as necessary to protect or effectuate a federal court judgment, and thus is not the equivalent of [those concepts]." *Hatcher v. Avis Rent-A-Car Sys., Inc.*, 152 F.3d 540, 543 (6th Cir. 1998).[3] For the exception to apply, the claim or issue raised in state court must have been previously presented to and actually decided by a federal court. *Chick Kam Choo*, 486 U.S. at 147; *see also Smith*, 564 U.S. at 306. Additionally, the parties in the state proceeding must be bound by the prior federal judgment. *Smith*, 546 U.S. at 312.

1.

In order to show that the claim or issue that the federal injunction is intended to insulate from state-court litigation has actually been decided by a federal court, the complaining party must make a "strong and unequivocal showing" that the same issue is being relitigated "in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings." *Huguley v. Gen. Motors Corp.*, 999 F.2d 142, 146 (6th Cir. 1993) (quoting *Am. Town Ctr. v. Hall 83 Assocs.*, 912 F.2d 104, 111 (6th Cir. 1990)). This is a "strict and narrow" prerequisite that is assessed on the "precise state of the record and [on] what the earlier federal order *actually* said," and not on a "*post hoc* judgment" by the district court "as to what the order was *intended* to say." *Chick Kam Choo*, 486 U.S. at 148. When faced with this issue in past cases, we have examined the record in both the state and federal proceedings to determine what issues and claims were raised and decided in the prior federal proceeding, the scope of the district court's judgment in the prior federal case, and the issues and claims being raised in the pending state-court action. *See Hatcher*, 152 F.3d at 543; *Huguley*, 999 F.2d at 147.

Often, the similarity in issues is clear. In *Great Earth Companies*, for example, the prior federal action established that a contract's arbitration clause was valid under the Federal Arbitration Act. 288 F.3d at 894. Because the federal plaintiffs subsequently sued the same

---

[3]For example, *res judicata* generally precludes an issue that "should have been litigated," *Hatcher*, 152 F.3d at 543, whereas the relitigation exception applies only to those claims or issues that "actually have been decided," *id.* (quoting *Chick Kam Choo*, 486 U.S. at 148).

defendant in state court challenging the validity and applicability of the same clause, we found that the relitigation exception empowered the district court to enjoin the state proceeding. *Id.*

Similarly, in *Hatcher*, the plaintiffs had previously sued Avis in federal court for terminating their agency agreement. 152 F.3d at 542. After entering into a federal consent judgment, the plaintiffs sued Avis and seven of its employees in state court making "the same factual assertions and allegations." *Id.* We concluded that the relitigation exception allowed a federal court to enjoin the claims against Avis but not against the individual employees because "no claim against them was actually decided by the federal court." *Id.* at 544.

Finally, in *Huguley*, we invoked the relitigation exception to enjoin a state court from considering a case alleging that General Motors had engaged in racial discrimination. *Huguley*, 999 F.2d at 145. We relied on a prior federal class-action consent decree that, by its explicit language, was intended to "insulate GM from [racial discrimination] claims such as the ones alleged . . . in the instant case," by members of a class of plaintiffs that included the complaining party. *Id.* at 147–48.

In a pair of cases, however, the Supreme Court refused to enjoin a state court considering a state-law question when a prior federal proceeding had not considered that question. First, in *Chick Kam Choo*, the Court refused to enjoin a state court from considering a liability question under Singapore law even though a federal court had previously dismissed the case under the doctrine of *forum non conveniens*. *Chick Kam Choo*, 486 U.S. at 148–49. The Court noted that the federal action had not resolved the merits of the Singapore-law claim and that the federal and state courts applied different *forum-non-conveniens* principles. *Id.* at 148. The Court concluded that the relitigation exception did not apply because "whether the Texas *state* courts are an appropriate forum for petitioner's Singapore law claims has not yet been litigated." *Id.* at 149.

Next, in *Smith v. Bayer Corp.*, the Court refused to enjoin a state court from deciding whether to certify a class under state law even though a federal court had previously refused to certify the proposed class under the federal rules. *Smith*, 564 U.S. at 310. The Court noted that the legal standards for class certification differed under state and federal procedural rules and

thus "the federal court resolved an issue not before the state court." *Id.* at 309. This was despite the fact that the underlying state claims "mirrored" those raised in the federal litigation. *Id.*

Looking to the facts before us, the City defines the issue originally presented to the federal court as "whether the City's refusal to rezone the property at issue constituted a violation of 202 North Monroe's federal constitutional rights under 42 U.S.C. § 1983." CA6 R. 20, at 20–21. This tracks the language in 202 North Monroe's initial complaint as well as the language in the federal consent judgment. If this is all that was decided, it would certainly not preclude a state court from considering the question of what Michigan law requires for a city to validly approve a proposed settlement. The Neighbors' state-court claim involves only the City's actions under state and local law. It does not address, in any way, the vindication of 202 North Monroe's federal constitutional rights.

Unfortunately, this case is not that simple. The consent judgment also establishes that "[t]he Subject Property is hereby rezoned from R-2 to PUD." No. 1:15-cv-785, DE 32, Page ID 510. In their state-court complaint, the Neighbors challenge the City's ability and authority, under state law, to rezone the property through a consent judgment without complying with the requirements of the MZEA—specifically, the super-majority approval threshold and the notice and public-hearing requirements. As relief, the Neighbors request that the state court declare the rezoning to be in violation of the MZEA, declare that the property be zoned R-2 (and not PUD), and enjoin the City or 202 North Monroe from taking any action in reliance on the rezoning. The City argues that this is an attempt to have the consent judgment declared void, that allowing the Neighbors to proceed could thwart the effectuation of a federal judgment, and that the state-court action conflicts with its intent to "resolve the issues regarding the appropriate zoning and land use for the property" through the consent judgment.[4] CA6 R. 20, at 21–24.

Despite the City's arguments, we note a number of factors that support a narrow interpretation of the consent judgment as well as a finding that the state-law issues were not actually decided. First, we are instructed to narrowly construe both the relitigation exception and

---

[4]The City relies on *Huguley*, 999 F.2d at 147–48, to argue that intent is relevant in determining the scope of what the district court decided. *Huguley*, however, concluded that a claim was actually decided based on the "plain language" and "express terms" of a consent decree, not the subjective intent of the parties. 999 F.2d at 147.

the "actually decided" prong. *See Chick Kam Choo*, 486 U.S. at 148. Second, this case differs from those where we have applied the relitigation exception—those where the state-court plaintiffs were seeking to litigate an identical claim. *See, e.g., Hatcher*, 152 F.3d at 542; *Huguley*, 999 F.2d at 145. Third, allowing the state court to proceed does not alleviate its obligation to consider the preclusive effect of the prior federal consent judgment. *See Smith*, 564 U.S. at 318. Fourth, the Supreme Court's decisions in *Smith* and *Chick Kam Choo* suggest that this prong of the relitigation exception is not applicable when the state court is deciding a parallel question under state law and that question of state law, as is the case here, was not directly addressed in the earlier federal action.[5]

There is no debate that, should the state court be allowed to proceed, it might reach a result that calls into question the validity of the consent judgment's explicit language rezoning the property. The question before us, however, is not about the result but rather the scope of what was decided in reaching that result. After evaluating the record before us, we conclude that the City has failed to make the required "strong and unequivocal showing" that the issue in state court—whether the City's approval of the settlement complied with state and local law—was previously raised, argued, and decided. *See Huguley*, 999 F.2d at 146. Accordingly, we cannot apply the relitigation exception and the state-court litigation must be allowed to proceed.

2.

Even if we were to find that the state-court issue had been previously raised and decided, we could not apply the relitigation exception unless we also concluded that the Neighbors were bound by the prior federal judgment. To do so, we would have to find that they were a party to the original federal action or that they qualified for one of the "discrete and limited exceptions" to the general rule against nonparty preclusion. *See Smith*, 564 U.S. at 312 (citing 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4449 (2d ed. 2002) and *Taylor v. Sturgell*, 553 U.S. 880, 898 (2008)).

---

[5]We note, however, that *Smith* and *Chick Kam Choo*, could be distinguished as allowing the litigation of procedural questions under state law after the federal procedural question had been answered, in part, because the federal court refused to reach the merits of the underlying claims.

It is clear that the Neighbors were not a party to the prior federal action. As the district court correctly recognized, they were "not named," were "expressly denied the right to intervene," were "not parties," were "not represented," and their interests "were not at all involved." No. 1:16-cv-325, DE 25, Page ID 552. The City does not dispute this point.

Instead, the City argues that the Neighbors satisfy one of the nonparty preclusion exceptions because they were "adequately represented" by the City and its elected officials. The Supreme Court has explained this exception as follows:

> [I]n certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit. Representative suits with preclusive effect on nonparties include properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries.

*Taylor*, 553 U.S. at 894 (internal citations and quotation marks omitted). This exception is established only if (1) the interests of the nonparty and its representative are aligned; (2) the representative understood itself to be acting in a representative capacity or the interests of the nonparty were otherwise protected; and, sometimes, (3) the nonparty had notice of the original suit. *Id.* at 900; *see also Amos v. PPG Indus., Inc.*, 699 F.3d 448, 452–53 (6th Cir. 2012).[6]

Here, the interests of the City and the Neighbors were not aligned as indicated by the City's agreement, through the consent judgment, to rezone the property in 202 North Monroe's favor. A subset of the Neighbors had filed a protest petition challenging the zoning decision. They also attempted to intervene in the initial federal suit both to protect their interest in opposing rezoning and to ensure that the City did not settle the case in order to circumvent the super-majority approval requirement that their protest petition had imposed. The difference in interests is further evinced by the fact that the City's settlement is the basis for the Neighbor's current state-court action. Because the City could not have adequately represented the Neighbor's interests on these facts, we find that the exception to the rule against nonparty

---

[6]Instead of relying on this binding precedent, the City grounds its argument in *Beyer v. Verizon North Inc.*, 715 N.W.2d 328, 330 (Ct. App. Mich. 2006) (per curiam), which considered the preclusive effect of a federal consent judgment. *Beyer* carries little persuasive value for three reasons. First, it is a decision of an intermediate state appellate court interpreting federal law. Second, it predates *Sturgell*'s clarification of nonparty preclusion exceptions. Third, it is distinguishable on its facts because the interests of state officials and the residents were much more closely aligned than those of the City and the Neighbors in this case.

preclusion does not apply, that the Neighbors are not bound by the consent judgment, and that the relitigation exception to the Anti-Injunction Act is thus inapplicable in this case.

In closing, we note that denial of the motion to intervene, followed by settlement on the terms of the consent judgment, meant that a challenge to the rezoning through further litigation was likely. The City thus invited its current dilemma, and the district court apparently failed to foresee the implications of the denial of the motion to intervene as well.

III.

For the foregoing reasons, we affirm the decision of the district court.