# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 17, 2022 Session

## JAMES WILLIAMS v. SMYRNA RESIDENTIAL, LLC, ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 78245      Bonita Jo Atwood, Judge**

_____

### No. M2021-00927-COA-R3-CV

_____

This appeal concerns the enforceability of an arbitration agreement in a wrongful death lawsuit. James Williams ("Plaintiff"), individually as next of kin and on behalf of the wrongful death beneficiaries of Granville Earl Williams, Jr., deceased ("Decedent"), sued Smyrna Residential, LLC d/b/a Azalea Court and Americare Systems, Inc. ("Defendants," collectively) in the Circuit Court for Rutherford County ("the Trial Court"). Decedent was a resident of Azalea Court, an assisted living facility. Plaintiff alleged his father died because of Defendants' negligence. Defendants filed a motion to compel arbitration, citing an arbitration agreement ("the Agreement") entered into by Decedent's daughter and durable power of attorney Karen Sams ("Sams") on behalf of Decedent when the latter was admitted to Azalea Court. Notably, the durable power of attorney ("the POA") did not cover healthcare decision-making. The Trial Court held that Sams lacked authority to enter into the Agreement and that, in any event, the wrongful death beneficiaries would not be bound by the Agreement even if it were enforceable. Defendants appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and KRISTI M. DAVIS, JJ., joined.

Christy Tosh Crider and Caldwell G. Collins, Nashville, Tennessee, for the appellants, Smyrna Residential, LLC d/b/a Azalea Court and Americare Systems, Inc.

Richard D. Piliponis, Benjamin J. Miller, and Sarah L. Martin, Nashville, Tennessee, for the appellee, James Earl Williams, individually as next of kin and on behalf of the wrongful death beneficiaries of Granville Earl Williams, Jr., deceased.

# OPINION

## Background

In February 2021, Plaintiff, Decedent's son, filed a wrongful death lawsuit in the Trial Court against Defendants. Decedent had been admitted to Azalea Court, an assisted living center, on February 28, 2020; he died on April 27, 2020. Plaintiff's complaint set out two counts: (1) negligence pursuant to the Tennessee Healthcare Liability Act, Tenn. Code Ann. § 29-26-115 *et seq.* and (2) gross negligence, willful, wanton, reckless, malicious and/or intentional misconduct. Plaintiff alleged the following facts, among others:

> 12. At all times during his residency, [Decedent] was at high risk for elopement. Defendants were aware of this condition, or reasonably should have been aware, and were required to meet his needs or discharge him to an appropriate facility where his needs could be met.
> 13. Defendants failed to develop and implement an effective plan for preventing elopement.
> 14. Defendants failed to implement a system to ensure that [Decedent] was properly monitored and protected from acts of abuse and neglect.
> 15. Due to the inadequate care of Defendants, [Decedent] suffered injuries and harm which include, but are not limited to, the following:
>     (a) Abuse and neglect;
>     (b) Falls and injuries from falls;
>     (c) Delays in care;
>     (d) Severe pain; and
>     (e) Death.
> 16. The foregoing injuries are a direct and proximate result of the acts or omissions set forth herein, singularly or in combination. As a result of these injuries, [Decedent's] health deteriorated, he required medical treatment, he suffered significant pain, and he died.

Plaintiff also noted the possibility that Defendants would assert the existence of an arbitration agreement:

> 6. In the event Defendants believe that [Decedent] or someone on his behalf has entered into an agreement to arbitrate any issues between them, then pursuant to 9 USCS § 4 Plaintiff demands a trial by jury to resolve all fact issues of whatever nature related to Defendants' claims that a binding arbitration agreement was entered into that would require the submission of the claims raised in this complaint to an arbitrator.

In April 2021, Defendants filed their Motion to Compel Arbitration. In their memorandum of law filed in support of their motion, Defendants asserted that on May 11, 2007, Decedent vested his daughter Sams with "broad and encompassing authority" to act on his behalf when he executed the POA; that the POA provided specific authority for Sams to "*act for* [Decedent] *in all claims and litigation matters*"; that Decedent also executed a Living Will on April 20, 2007 granting Sams authority to make decisions about life-prolonging and medical procedures; that, in connection with Decedent's admission to Azalea Court in February 2020, Sams signed the Agreement; and that the Agreement stated, among other things, that the parties are "giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration." Defendants contended that "the Arbitration Agreement requires arbitration of all disputes that are now before this Court, and the Court should compel this case to arbitration." In July 2021, the Trial Court heard Defendants' Motion to Compel Arbitration.

In August 2021, the Trial Court entered an order denying Defendants' Motion to Compel Arbitration. In its order, the Trial Court stated, as relevant:

> 1. The parties agree that Granville Earl Williams, Jr. (Mr. Williams) executed a General Durable Power of Attorney (GDPOA) on May 11, 2007 selecting Karen Sams as his attorney-in-fact and that GDPOA stayed in place through all times relevant to this action. The parties agree that among the powers granted by the GDPOA are the right to bring "claims and litigation[.]" The parties agree that the GDPOA is silent on the authority to make health care decisions and therefore does not confer the authority to make health care decisions.
> 2. The parties agree that on April 20, 2007, Mr. Williams executed a Living Will declaring his end of life intentions and that he designated Karen Sams as his "surrogate to carry out the provisions of this declaration."
> 3. The parties agree that on February 6, 2018, Karen Sams signed a Physician Orders for Scope of Treatment which was also signed by a physician and made a part of Mr. Williams's medical record acknowledging that the health care decisions contained therein were discussed with the "Patient/Resident" and "Daughter" and that "The Basis for These Orders" are "Patient's best interest (patient lacks capacity or preferences unknown)[.]"
> 4. The parties agree that on February 28, 2020, Karen Sams entered into an arbitration agreement (Arbitration Agreement) on behalf of Mr. Williams as his attorney-in-fact. A copy of the Arbitration Agreement is attached to this Order as Exhibit 1. The parties agree that Karen Sams signed

the Arbitration Agreement on the line marked "Signature of Resident Representative/Surrogate[.]" In addition to signing as "Resident Representative/Surrogate" her authority is handwritten on the Arbitration Agreement as "POA[.]"

5. The parties agree that the Arbitration Agreement was not a precondition of admission and that it was entered into voluntarily.

6. The Court applies the standard of review set forth in *Denton v. Allenbrooke Nursing & Rehabilitation Center, LLC*, 495 F. Supp. 3d 601 (W.D. Tenn. Oct. 16, 2020):

> The Sixth Circuit treats motions to compel arbitration like motions for summary judgment. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The court views all facts and inferences in the light most favorable to the nonmoving party. *Id.* The movant "bears the ultimate burden of establishing the existence of a valid agreement to arbitrate," and must present "some evidence" that the parties agreed to arbitrate. *Hammond v. Floor & Decor Outlets of Am., Inc.*, No. 3:19-cv-01099, 2020 WL 2473717, at *3 (M.D. Tenn. May 13, 2020); *Foust v. Comcast Corp.*, No. 3:19-CV-173-HSM-DCP, 2020 WL 1891755, at *4 (E.D. Tenn. Jan. 28, 2020). Once the movant makes a prima facie showing of the agreement's existence, the party opposing arbitration "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc.*, 288 F.3d at 889.

*Denton*, 495 F. Supp. 3d at 607-08.

7. The Court finds that the Defendants have made a prima fac[i]e case showing the existence of a valid agreement to arbitrate. The Court further finds that the Plaintiff has raised a genuine issue of material fact regarding the validity of the agreement to arbitrate with regard to Karen Sams's authority to enter into the arbitration agreement on behalf of Mr. Williams.

8. The Court finds that the decision to enter into the Arbitration Agreement as part of Mr. Williams's admission to the Defendants' long-term care facility was a health care decision and could not be made by Karen Sams, because she did not hold authority to make health care decisions for Mr. Williams.

9. The Court further finds that the wrongful death beneficiaries on whose behalf this action is filed are not bound by the Arbitration Agreement.

Defendants' motion to compel arbitration is therefore denied. It is so ORDERED.

-4-

Defendants timely appealed to this Court.

## Discussion

Although not stated exactly as such, Defendants raise the following issues on appeal: 1) whether the Trial Court erred in concluding Sams lacked authority to execute the Agreement and 2) whether the Trial Court erred in concluding that Decedent's wrongful death beneficiaries are not bound by the Agreement.

In *Trigg v. Little Six Corp.*, a case involving a Tennessee Rule of Appellate Procedure 9 interlocutory appeal of a trial court's decision on a motion to compel arbitration, this Court articulated the standard of review for a trial court's grant or denial of a motion to compel arbitration as follows:

> Our review of a trial court's grant or denial of a motion to compel arbitration is governed by the same standards that apply to a bench trial. *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 496 (Tenn. Ct. App. 2008). As we observed in *Rosenberg v. BlueCross BlueShield of Tenn., Inc.*, 219 S.W.3d 892, 903-04 (Tenn. Ct. App. 2006),

> > [a]s a general rule, a court's enforcement of an arbitration provision is reviewed *de novo*. *See Cooper v. MRM Inv. Co.*, 367 F.3d 493, 497 (6th Cir. 2004). A trial court's order on a motion to compel arbitration addresses itself primarily to the application of contract law. We review such an order with no presumption of correctness on appeal. *See Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 356 (Tenn. Ct. App. 2001); *see also Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 629 (Tenn. 1999). However, to the extent that findings of fact are necessary concerning the "cost-prohibitive" nature of the arbitration sought, these findings come to us with a presumption of correctness absent a preponderance of evidence to the contrary. Tenn. R. App. P. 13(d); *T.R. Mills Contractors v. WRH Enterprises, LLC et al.*, 93 S.W.3d 861, 864 (Tenn. Ct. App. 2002).

*Trigg v. Little Six Corp.* 457 S.W.3d 906, 911 (Tenn. Ct. App. 2014). There are no disputed facts relevant to the issues on appeal. The appeal at bar presents purely legal questions, which we review *de novo* without a presumption of correctness.

-5-

We first address whether the Trial Court erred in concluding Sams lacked authority to execute the Agreement. In the seminal case of *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 879 (Tenn. 2007), which both parties cite albeit to different ends, the Tennessee Supreme Court considered among other things "whether a durable power of attorney for health care authorized the attorney-in-fact to enter into an arbitration agreement as part of a contract admitting the principal to a nursing home and thereby to waive the principal's right to trial by jury." Our Supreme Court held, among other things, that "the power of attorney authorized the attorney-in-fact to enter into the arbitration agreement on behalf of the principal." *Id*. As our Supreme Court discussed:

> The plaintiff's argument on this issue is faulty in at least one other respect. Her purported distinction between making a legal decision and a health care decision fails to appreciate that signing a contract for health care services, even one without an arbitration provision, is itself a "legal decision." The implication of the plaintiff's argument is that the attorney-in-fact may make one "legal decision," contracting for health care services for the principal, but not another, agreeing in the contract to binding arbitration. That result would be untenable. Each provision of a contract signed by an attorney-in-fact could be subject to question as to whether the provision constitutes an authorized "health care decision" or an unauthorized "legal decision." Holding that an attorney-in-fact can make some "legal decisions" but not others would introduce an element of uncertainty into health care contracts signed by attorneys-in-fact that likely would have negative effects on their principals. Such a holding could make it more difficult to obtain health care services for the principal. And in some cases, an attorney-in-fact's apparent lack of authority to sign an arbitration agreement on behalf of the principal presumably could result in the principal being unable to obtain needed health care services. For example, a mentally incapacitated principal could be caught in "legal limbo." The principal would not have the capacity to enter into a contract, and the attorney-in-fact would not be authorized to do so. Such a result would defeat the very purpose of a durable power of attorney for health care.
> Our holding on this issue is necessarily based upon both the language of King's [(an incapacitated individual)] power of attorney and the provisions of the Tennessee Durable Power of Attorney for Health Care Act. Our holding, however, is consistent with cases from other jurisdictions considering the issue. *See, e.g., Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So.2d 661 (Ala. 2004); *Hogan v. Country Villa Health Servs.*, 148 Cal.App.4th 259, 55 Cal.Rptr.3d 450, 453-55 (2007) (citing *Garrison v. Superior Court of Los Angeles County*, 132 Cal.App.4th 253, 33 Cal.Rptr.3d 350 (2005)); *Sanford v. Castleton Health Care Ctr., L.L.C.*, 813 N.E.2d 411

-6-

(Ind. Ct. App. 2004). *But see Texas Cityview Care Ctr., L.P. v. Fryer*, Nos. 2-06-373-CV, 2-06-426-CV, 2007 WL 1502088, *5 (Tex. App.-Fort Worth May 24, 2007) (stating "nothing in the medical power of attorney indicates that it was intended to confer authority on [the attorney-in-fact] to make legal, as opposed to health care, decisions for [the principal], such as whether to waive [the principal's] right to a jury trial by agreeing to arbitration of any disputes").

 For the reasons stated above, we must reject the plaintiff's argument that King's power of attorney does not authorize Daniel [(King's attorney-in-fact)] to sign the arbitration agreement and thereby to waive King's right to trial by jury. We hold that Daniel was authorized to sign the nursing-home contract, including its arbitration provision….

*Owens*, 263 S.W.3d at 884-85.

In *Crawford v. Allenbrooke Nursing and Rehab. Ctr., LLC*, a federal case involving a motion to compel arbitration, the United States District Judge discussed Tennessee law pertinent to the issues on appeal, including the *Owens* case, as follows:

 Signing the Agreement was a health care decision under Tennessee law too. *See Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 884 (Tenn. 2007); *Jones [v. Allenbrooke Nursing & Rehab. Ctr., LLC]*, [No. W2019-00448-COA-R3-CV,] 2019 WL 6842372, at *3 [(Tenn. Ct. App. Dec. 16, 2019)] ("[T]he execution of admission documents at a health care facility is a healthcare decision."); *Bockelman v. GGNSC Gallatin Brandywood LLC*, No. M2014-02371-COA-R3-CV, 2015 WL 5564885, at *6 (Tenn. Ct. App. Sept. 18, 2015); *Barbee [v. Kindred Healthcare Operating, Inc.]*, [No. W2007-00517-COA-R3-CV,] 2008 WL 4615858, at *11 [(Tenn. Ct. App. Oct. 20, 2008)]. Indeed, in *Owens v. National Health Corp.*, the Tennessee Supreme Court held that admitting someone to a nursing home "clearly constitutes a 'health care decision' " under § 34-6-201. 263 S.W.3d at 884.

        \*\*\*

 In sum, *Owens* explains that some health care decisions will also involve legal decisions. This means that an attorney-in-fact with a power of attorney for health care may make some legal decisions too. *Owens*, 263 S.W.3d at 885. But the converse does not appear to be true. Put differently, to make a legal decision, an attorney-in-fact need not make any health care decisions. *Sykes [v. Quince Nursing & Rehab. Ctr., LLC]*, [No. 2:19-cv-

-7-

02602-SHL-tmp,] 2020 WL 7866881, at *3 [(W.D. Tenn. Sept. 1, 2020)] ("[W]hile some legal decisions, like hospital admission, are necessary to fully manage the healthcare of a principal, no healthcare decisions are necessary to fully manage the legal and financial affairs of the principal.")

And so, with all this in mind, the court finds that the distinction between legal and health care decisions is still relevant under *Owens*. What is more, entering the Agreement was a health care decision under Tennessee law. *See Owens*, 263 S.W.3d at 884; *Jones*, 2019 WL 6842372, at *3; *Bockelman*, 2015 WL 5564885, at *6; *Barbee*, 2008 WL 4615858, at *11.

**\*\*\***

That said, the POA that Ms. Crawford signed is broad. It authorizes Plaintiff to enter into "contracts and instruments of every kind ... to the same extent ... as [Ms. Crawford] could." What is more, the POA "shall be construed for all purposes as vesting said Marvius Ray Crawford with an unlimited, open, general power of attorney of the broadest fashion possible to bind [Ms. Crawford] in all matters whatsoever."

Yet § 34-6-203 is clear that, for an attorney-in-fact to have authority to make a health care decision for a principal, the power of attorney document must "specifically authorize" the attorney-in-fact to make health care decisions. And here, the POA fails to mention health care. As a result, the POA does not "specifically authorize" Plaintiff to make health care decisions for his mother.[1] *See Sykes*, 2020 WL 7866881, at *3 ("[S]tate law allows healthcare attorneys in fact to make all decisions necessary to healthcare, but it explicitly limits the ability of attorneys to make healthcare decisions unless 'specifically authorize[d].' " (quoting Tenn. Code Ann. § 34-6-201(3); § 34-6-203)).

Plus as Plaintiff points out, the POA refers to the "Uniform Durable Power of Attorney Act," which provides in part that "[n]othing contained in this section ... shall be construed to vest an attorney in fact with, or authorize an attorney in fact to ... [m]ake any decisions regarding medical treatment or health care, except as incidental to decisions regarding property or finances." Tenn. Code Ann. § 34-6-108(c)(9). This shows that a general power of attorney under the Uniform Durable Power of Attorney Act does not give an

---

[1] For instance, the POA does "specifically authorize [Ms. Crawford's] attorney-in-fact ... to act for [her] in the organization of any corporation...." This just goes to show that the POA could have, but did not, specifically authorize Plaintiff to make health care decisions.

-8-

attorney-in-fact authority to make health care decisions. Instead, to have authority to make health care decisions, Ms. Crawford needed to make Plaintiff her power of attorney for health care under § 34-6-201. And because she did not "specifically" give Plaintiff this authority, he could not enter the Agreement on her behalf.

With all this in mind, the Court thus **DENIES** Allenbrooke's motion to compel arbitration.

*Crawford v. Allenbrooke Nursing and Rehab. Ctr., LLC*, No. 2:21-cv-02054-TLP-tmp, 2021 WL 3926244, at *7-10 (W.D. Tenn. Sept. 1, 2021) (footnote in original but renumbered) (Internal record citations omitted).

In another federal case out of the western district of Tennessee addressing *Owens*, the United States District Judge stated:

[D]espite Defendant's contention otherwise, the distinction between a legal decision and a healthcare decision is still a relevant one for authorization under Tennessee law. In *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876 (Tenn. 2007), the Tennessee Supreme Court found that an attorney in fact authorized to make only healthcare decisions could also validly sign a nursing home's arbitration agreement, ostensibly a legal decision. The court in *Owens* pointed out that the attorney in fact must often make legal decisions to consent to healthcare for the principal. *Id*. at 884. Given that, the court concluded that it makes sense that a healthcare decisionmaker would also have legal authority.

Defendant argues that this Court should extend *Owens* and find that a power of attorney that does not mention healthcare should also apply to healthcare decisions. However, this extension does not flow logically from the reasoning in *Owens*. First, while some legal decisions, like hospital admission, are necessary to fully manage the healthcare of a principal, no healthcare decisions are necessary to fully manage the legal and financial affairs of a principal. In essence, the fact that a healthcare decision also encompasses a legal decision does not mean that a legal decision also includes healthcare. Second, state law allows healthcare attorneys in fact to make all decisions necessary to consent to healthcare, but it explicitly limits the ability of attorneys in fact to make healthcare decisions unless "specifically authorize[d]." Tenn. Code Ann. § 34-6-201(3); Tenn. Code Ann. § 34-6-203.

*Sykes v. Quince Nursing & Rehab. Ctr.*, LLC, No. 2:19-cv-02602-SHL-tmp, 2020 WL 7866881, at *3 (W.D. Tenn. Sept. 1, 2020).

In their brief, Defendants assert: "Here, the Arbitration Agreement executed by Ms. Sams as Mr. Williams' validly-appointed Power of Attorney was a *voluntary decision selecting the venue for future claims and litigation*, and it made no mention of healthcare decisions in its entirety." (Emphasis in original, citation omitted). Defendants assert as an additional basis for Sams' authority that Sams was Decedent's surrogate for healthcare decision-making purposes, stating: "The POST [Physicians Orders for Scope of Treatment] form makes plain that Mr. Williams' physician found he lacked capacity and recognized Ms. Sams as Mr. Williams' health care surrogate." Defendants rely further upon Decedent's living will. Defendants assert that it makes no sense that Sams had end-of-life authority for Decedent; that she could contract for Decedent during his lifetime; yet she could not make healthcare decisions in-between. Finally, Defendants point out that executing the Agreement was optional; it was not necessary to admit Decedent to Azalea Court. For his part, Plaintiff argues that *Owens* and its progeny are clear that the execution of an arbitration agreement in the context of admission to a long-term care facility is a healthcare decision, and Sams lacked the necessary healthcare decision-making authority to enter into the Agreement on Decedent's behalf. Plaintiff argues further that Defendants waived their surrogate argument by raising it for the first time on appeal. Nevertheless, addressing the merits of Defendants' surrogate argument, Plaintiff states: "[T]he mandates of the [Health Care Decisions Act] were to be met *before* Ms. Sams could become Mr. Williams's surrogate and legally sign the POST; Ms. Sams was not a duly appointed surrogate *because* she signed the POST." (Emphases in original).

Shorn of context, signing a stand-alone arbitration agreement is a legal decision. Here, however, it is undisputed that the Agreement was executed in the context of Decedent's admission to Azalea Court. While the Agreement was "optional," it was bound up in the context of a healthcare decision—namely, Decedent's admission to a long-term care facility. The Agreement clearly was intertwined with the decision to admit Decedent. At oral arguments, counsel for Defendants counted the Agreement—"optional" though it was—as one of the "necessary" documents for Decedent's admission to Azalea Court. We conclude that, pursuant to *Owens* and its progeny, Sams' signing the Agreement on Decedent's behalf was part and parcel of a healthcare decision. Whether Sams was authorized either to sign the Agreement, or even to admit Decedent to Azalea Court in the first place, is another matter. The POA did not provide or even contemplate healthcare decision-making power for Sams.[2] Our General Assembly has made it clear by statute, as

---

[2] The following lines were marked with an X on the POA concerning which powers Decedent wanted Sams to have: to sell, mortgage, exchange, lease or otherwise deal with real estate, land and business; to buy, sell[,] deal with chattels and goods (tangible personal property); to control bank and financial interest; to control or direct personal business or business interest; to control any insurance or annuity policy; to act for

-10-

discussed in *Crawford* and *Sykes*, that healthcare decision-making pursuant to a power-of-attorney in Tennessee requires specific authorization by healthcare power-of-attorney. While Defendants criticize this distinction between healthcare and legal decision-making, the distinction is a policy decision made by our General Assembly and is the current law in Tennessee, and we are bound to apply it. Defendants cite *Necessary v. Life Care Ctrs. of Am., Inc.*, No. E2006-00453-COA-R3-CV, 2007 WL 3446636 (Tenn. Ct. App. Nov. 16, 2007), *no appl. perm. appeal filed*, in which this Court vacated the trial court's judgment that the plaintiff lacked authority to sign an arbitration agreement on the decedent's behalf in the context of admission to a healthcare facility. However, the plaintiff in *Necessary* had express authority to sign the admission documents. *Id*. at *5. In the present case, the POA provided Sams no such authority. *Owens* also is of no avail to Defendants because, unlike the present case, that case featured a healthcare power-of-attorney. While making a medical decision may necessarily entail making a legal decision, the reverse does not hold true. Here, the POA simply did not confer upon Sams the authority to make healthcare decisions. Sams lacked authority under the POA either to admit Decedent to Azalea Court in the first place or to sign the Agreement in connection with Decedent's admission as those were healthcare decisions.

The alternative bases for Sams' authority, as argued by Defendants, fare no better. First, Defendants' failure to raise their surrogate argument below renders that argument waived. However, even considering the argument, Defendants have not begun to identify how Sams was Decedent's surrogate. *See* Tenn. Code Ann. § 68-11-1806(b)(1) (requiring that the designated physician make a determination of incapacity); Tenn. Code Ann. § 68-11-1806(c)(1) (requiring that the patient's surrogate be identified by the supervising health care provider as well as documented in the current clinical record of the institution or institutions at which the patient is then receiving health care). The statutory requirements for Sams' surrogate status with respect to Decedent have not been established. Finally, Decedent's admission to Azalea Court was not an "end-of-life" matter; it was a healthcare decision of the sort identified in *Owens*. Decedent's living will is of no avail to Defendants on this issue. We decline to extend the Tennessee Supreme Court's holding in *Owens*. We affirm the Trial Court in its conclusion that Sams lacked authority to enter into the Agreement on Decedent's behalf. The Agreement is, therefore, unenforceable.

Having found the Agreement unenforceable, the second and final issue we address is whether the Trial Court erred in concluding that Decedent's wrongful death beneficiaries would not be bound by the Agreement even if it were enforceable. In their reply brief,

---

Decedent in estate, trust and other beneficiary transaction; to act for Decedent by managing assets transferred to any living trust that Decedent may have; to act for Decedent in all claims and litigation matters; to act for Decedent in securing all governmental benefits owed to Decedent; and to take any action required to fulfill tax obligations. In addition, the line "Do you wish to put restrictions on your attorney-in-fact" was marked X for "no."

-11-

Defendants argue that "the validly-executed agreement binds the wrongful death beneficiaries because the wrongful death claim is derivative of the estate's claim." (Citation omitted). For his part, Plaintiff notes that he is a not a party to the Agreement and contends he is not bound by it. Plaintiff argues that as a wrongful death beneficiary, this is now his action rather than Sams' or Decedent's action. Plaintiff cites to certain significant cases pertaining to this issue, one of which is the federal case of *Wood v. Greenfield Assisted Living of Memphis, LLC*, No. 15-cv-02151-SHL-tmp, 2015 WL 11051100 (W.D. Tenn. June 22, 2015). In *Wood*, which supports Defendants' position, the United States District Judge stated, in part:

> Nothing in the Federal Arbitration Act "authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Arbitration is a matter of contract and therefore "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Frizzell Const. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 (Tenn. 1999) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)). However, notwithstanding these general principles, some states have allowed individuals to bind their wrongful death beneficiaries to arbitration agreements even when those beneficiaries were not parties to the agreement. These states typically reason that wrongful death claims belong to the decedent, not the beneficiaries, and that the decedent therefore has the authority to restrict those claims to arbitration. While Tennessee courts have not ruled on this issue directly, they have held that a wrongful death claim belongs to the deceased and not the beneficiaries. *See Lynn v. City of Jackson*, 63 S.W.3d 332, 335-36 (Tenn. 2001).

> Tennessee has a "hybrid" wrongful death statute that combines the approaches of both "survival statutes" and "pure wrongful death statutes."[3] *See Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 598-600 (Tenn. 1999). The liability section of the Tennessee statute (Tenn. Code Ann. § 20-5-106(a)) is worded like the survivorship statutes, emphasizing that a

---

[3] Wrongful death statutes generally fall into two categories: survival statutes, in which the victim's cause of action survives their death and can be recovered through the victim's estate, and "pure" wrongful death statutes that create a new cause of action in favor of the survivors of the victim based on the survivor's loss. States that have survival statutes generally allow parties to bind their heirs to arbitrate wrongful death claims because the claim belongs solely to the victim and the heirs are merely bringing the claim on the deceased's behalf. *See, e.g., In re Labatt Food Service, L.P.*, 279 S.W.3d 640 (Tex. 2009). In contrast, states that have pure wrongful death statutes generally do not allow parties to bind their wrongful death beneficiaries to arbitration because the wrongful death claim is designed to compensate the heirs for their loss, not simply to preserve the decedent's cause of action. *See, e.g., Boler v. Sec. Health Care, L.L.C.*, 2014 OK 80, 336 P.3d 468, *cert. denied*, No. 14-1005, 2015 WL 730872 (U.S. June 1, 2015).

wrongful death cause of action belongs to the deceased, but the wrongful death damages statute (Tenn. Code Ann. § 20-5-113) specifically recognizes the right of the wrongful death beneficiaries to recover damages for the loss of a loved one. While the damages statute expands upon the recovery traditionally available under a survivorship statute, the Tennessee Supreme Court has made two things clear: (1) there is only one cause of action under the wrongful death statute and (2) the cause of action firmly belongs to the deceased. *See Sullivan ex rel. Wrongful Death Beneficiaries Of Sullivan v. Chattanooga Med. Investors, LP*, 221 S.W.3d 506, 511 (Tenn. 2007) (holding that the statute of limitations is not tolled in a wrongful death action due to the beneficiaries' incapacity because that cause of action belongs to the deceased); *see also Lynn v. City of Jackson*, 63 S.W.3d 332, 335-36 (Tenn. 2001) (noting that, while the wrongful death damages statute is a hybrid wrongful death / survivorship statute, the cause of action is a survivorship statute that belongs to the estate).

Mr. Wood, as Mrs. Wood's representative, had the authority to bind Mrs. Wood's estate to arbitration. While the wrongful death beneficiaries may be compensated for their unique losses, that compensation is derivative of the estate's claim. Since the wrongful death claim belongs to the estate and not to the beneficiaries, those beneficiaries must seek their damages in whatever forum the estate agreed to, here, arbitration. Therefore, Defendants' Motion to Compel Arbitration is GRANTED.

*Wood*, 2015 WL 11051100, at *4-5 (footnote in original but renumbered).

However, Plaintiff also cites a 2017 case by the Tennessee Supreme Court for the proposition that *Wood* was wrongly decided. In *Beard v. Branson*, 528 S.W.3d 487 (Tenn. 2017)—a case not involving arbitration—our Supreme Court stated:

Certainly, in some sense, a wrongful death action is always prosecuted "on behalf of" the decedent, because the suit asserts a right of action that originally belonged to the decedent and would have continued to belong to the decedent had death not intervened. Nevertheless, recognition that the right of action asserted in a wrongful death lawsuit originated in the decedent does not equate to a holding that the surviving spouse is acting *as a legal representative* for the decedent. We must conclude that none of the cases cited by Trinity address the precise issue raised in this appeal, namely, whether a surviving spouse who files a wrongful death action is asserting his own claim or that of the decedent.

***

In sum, the language of section 20-5-106(a), read *in pari materia* with the other wrongful death statutes, does not support an interpretation that the surviving spouse brings a wrongful death action in a representative capacity on behalf of either the decedent or the decedent's estate. Rather, the statute's plain language indicates that, in a wrongful death lawsuit, the surviving spouse asserts his own right of action for his own benefit and for the benefit of the other statutory beneficiaries who share in any recovery.

We must conclude that Section 20-5-106 says what it means and means what it says, namely, that "[t]he right of action" that Mrs. Hartley [(the decedent)] would have had against the defendants but for her death "pass[ed] to" Mr. Hartley, her surviving spouse, for the benefit of Mr. Hartley and the decedent's next of kin. We hold, therefore, that in filing the initial *pro se* wrongful death lawsuit in this case, Mr. Hartley was not representing the legal interests of either the decedent or her estate.

*Beard*, 528 S.W.3d at 502-04.

While *Wood* supports Defendants' position, the Tennessee Supreme Court has since clarified Tennessee wrongful death jurisprudence. In *Beard*, our Supreme Court stated that "Mr. Hartley was not representing the legal interests of either the decedent or her estate[,]" 528 S.W.3d at 504, and further that "the surviving spouse asserts his own right of action for his own benefit and for the benefit of the other statutory beneficiaries who share in any recovery." *Id*. at 503. Although Plaintiff is not Decedent's surviving spouse, he is a statutory beneficiary. Defendants cite "over 100 years of Tennessee case law" in support of their ultimate contention that the same terms applying to Decedent's cause of action apply to the wrongful death beneficiaries. However, we are not at liberty to ignore the most recent instruction from the Tennessee Supreme Court on the matter, which *Beard* represents, no matter the longevity of the preceding interpretation. In the present case, Plaintiff is bringing his own right of action for his own benefit and the benefit of the other statutory beneficiaries for wrongful death; he is not merely a representative of Decedent or his estate. Plaintiff did not sign the Agreement. In keeping with *Beard*, even if the Agreement were enforceable—and we have held it is not—Plaintiff and the wrongful death statutory beneficiaries on whose behalf this action was filed would not be bound by it as they were not parties to the Agreement.[4] We affirm the judgment of the Trial Court in its entirety.

---

[4] Plaintiff attempts to raise an additional issue, to wit: should this Court reverse the Trial Court, send this matter to arbitration, and Defendants were to raise comparative fault as a defense, whether Plaintiff would be substantially prejudiced by an "empty chair" defense as Defendants have not filed an answer to his

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Smyrna Residential, LLC d/b/a Azalea Court and Americare Systems, Inc., and their surety, if any.

_____

D. MICHAEL SWINEY, CHIEF JUDGE

---

complaint. Plaintiff failed to identify this issue in his statement of issues in his appellate brief. In any event, Plaintiff's "empty chair" would-be issue is pretermitted, as we affirm the Trial Court on both issues presented.